UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| The United States of America, *ex rel.* Joseph M. Thomas, Bringing this Action on Behalf of the United States of America,<br><br>*Plaintiff*,<br><br>v.<br><br>Duke University,<br>Duke University Health System, Inc.,<br>William M. Foster, Ph.D.,<br>and<br>Erin N. Potts-Kant,<br><br>*Defendants*. | Civil Action No. 4:13-cv-00017 |

**RELATOR'S OPPOSITION TO**
**POTTS-KANT'S MOTION TO DISMISS**

Now comes the Relator, Joseph M. Thomas, by counsel, and submits this Opposition to Potts-Kant's Motion to Dismiss (Dkt. 70).

The Court should deny Potts-Kant's Motion to Dismiss on all grounds because: (i) the Western District of Virginia has personal jurisdiction over Potts-Kant under the "national contacts" test; (ii) venue under the False Claims Act lies in the Western District of Virginia as to all Defendants, including Potts-Kant; and (iii) Thomas has properly pled claims against Potts-Kant.

**I.   Introduction**

Duke University has engaged in a grant fraud scheme of unprecedented scope and scale. Spanning over a decade, Defendants Duke University ("Duke"), Duke University Health

1

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 1 of 20

Systems ("DUHS"), William M. Foster, Ph.D. ("Foster"), and Erin N. Potts-Kant ("Potts-Kant") defrauded the National Institutes of Health, the Environmental Protection Agency, and other federal agencies of over one hundred million dollars in research grant monies. Duke's scheme utilized falsified[1] or fabricated[2] research data in federal grant applications and grant progress reports to obtain federal grant funds. Duke's research fraud was self-perpetuating: the false data begat federal grant funds, which begat more false data and, then, more federal grant funds. (Dkt. 25 [Am. Compl.] ¶ 6.)

At the center of this fraud, Foster's animal physiology laboratory (known as the "Foster Lab") operated as an experimental core that centrally performed (or claimed to perform) highly specialized research experiments on the *flexi*Vent and multiplex machines. (*Id.* ¶¶ 5, 27.) Within the Foster Lab, Potts-Kant generated false, fabricated, or otherwise fraudulent data for these experiments. (*Id.* ¶¶ 154-58.) The Foster Lab, then, disseminated these false research results to be reported in grant applications, grant progress reports, and scientific publications. (*Id.* ¶¶ 27, 158-59.) Once federal agencies awarded the grants, Duke researchers funneled grant funds back to the Foster Lab to produce more fraudulent research. (*Id.* ¶ 28.)

Potts-Kant was critical to Duke's research fraud scheme. She generated the fraudulent research results; she had actual knowledge that the results she was producing were false, fabricated, or otherwise fraudulent. (*Id.* ¶¶ 156-158, 316; *see also id.* ¶ 233 ("all research completed by Potts-Kant is false, fabricated, and/or fraudulent in some way.").) Potts-Kant also knew that these fraudulent research results would be reported to the federal government to try to

---

[1] As defined by the research misconduct regulations, "falsified" means the "manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record." 42 C.F.R. § 93.103(b).

[2] "Fabricated" means "making up data or results and recording or reporting them." 42 C.F.R. § 93.103(a).

secure grant funding. (*Id.* ¶¶ 315-16.)

Thomas filed this action under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, shortly after Potts-Kant was arrested on an unrelated embezzlement charge.[3] (*See* Dkt. 1 (filed May 17, 2013).) The Amended Complaint states FCA claims against Duke, DUHS, Foster, and Potts-Kant for defrauding federal agencies of grant funds using the scheme described above.

Potts-Kant's Motion to Dismiss narrowly attacks three aspects of the Amended Complaint: personal jurisdiction, venue, and the pleading requirements of a FCA claim. (*See* Dkt. 70, 71.) Contrary to Potts-Kant's arguments, the Court's exercise of personal jurisdiction over Potts-Kant is proper because she has minimum contacts <u>with the United States</u>. Venue lies in the Western District of Virginia as to all Defendants, including Potts-Kant, under the FCA's venue provision. Finally, Thomas has properly pled facts showing that Potts-Kant knew that the false or fraudulent data she produced would be reported in federal grant documents, and, therefore, he has stated claims against her under the FCA. For these reasons, as detailed below, the Court should deny Potts-Kant's Motion to Dismiss in its entirety.

**II.**     **<u>The Court's exercise of personal jurisdiction over Potts-Kant is proper.</u>**

The Motion to Dismiss under Rule 12(b)(2) should be denied because the Western District of Virginia has personal jurisdiction over Potts-Kant.

    **A.**     **Standard of Review – Rule 12(b)(2)**

Once a defendant has affirmatively raised a challenge to personal jurisdiction, such as by motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of personal jurisdiction over the defendant is proper. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Where, as here, a defendant contests personal jurisdiction at the

---

[3] Aside from producing fraudulent research results, Potts-Kant embezzled over $14,000 in money from Duke. (*See* Am Compl. ¶¶ 7, 227.)

26907/1/7894140v1

outset of litigation, "a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* at 268. "When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.*

When a statute provides for nationwide service of process, the personal jurisdiction inquiry focuses on whether the defendant has minimum contacts with the United States as a whole, not the forum state. *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015) (holding, with regard to ERISA claims, district courts have personal jurisdiction if defendant has minimum contacts with United States); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997) (same, as to jurisdiction over civil RICO claim); *Hogue v. Milodon Engineering, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984) (same, as to bankruptcy jurisdiction). This is commonly known as the "national contacts" test. *See Skinner v. Armet Armored Vehicles, Inc.*, No. 4:12-cv-00045, 2014 U.S. Dist. LEXIS 118784, at *13-14 (W.D. Va. Aug. 26, 2014), *reconsidered on other grounds*, 2015 U.S. Dist. LEXIS 15547 (W.D. Va. Feb. 10, 2015).

The FCA provides for nationwide service of process. *Id.* at *13 ("the FCA authorizes nationwide and worldwide service of process."); *United States v. Gwinn*, No. 5:06-cv-00267, 2008 U.S. Dist. LEXIS 26361, at *49 (S.D. W. Va. 2008). Thus, the Western District of Virginia has applied the "national contacts" test to determine personal jurisdiction in FCA cases. *See Skinner*, 2014 U.S. Dist. LEXIS 118784, at *13-14. Contrary to Potts-Kant's assertions, personal jurisdiction under the FCA does not turn on "the traditional inquiry of whether the defendant[] [has] minimum contacts with the forum state." *Skinner*, 2014 U. S. Dist. LEXIS 118784, at *13 (quoting *Gwinn*, 2008 U.S. Dist. LEXIS 26361, at *48) (alterations omitted). "[T]he relevant

4

inquiry is 'whether the defendant has minimum contacts with the United States as a whole.'" *Id.* at *13-14 (quoting *United States ex rel. Thistlewaite v. Dowty Woodville Polymer*, 976 F. Supp. 207, 210 (S.D.N.Y. 1997)) (alterations omitted); *see also Gwinn*, 2008 U.S. Dist. LEXIS 26361, at *48.

### B. Potts-Kant has minimum contacts with the United States.

Potts-Kant unquestionably has contacts with the United States. As pled in the Amended Complaint, she worked for Duke University for over eight years. (Am. Compl. ¶¶ 22, 229.) In her Motion, Potts-Kant admits that she is currently a resident of the United States. (*See* Dkt. 71, p. 2 (stating "my state of residence, which is North Carolina.").) Based on these facts alone, the record sets forth a *prima facie* showing that Potts-Kant has minimum contacts with the United States. Accordingly, the Court has personal jurisdiction over Potts-Kant, and her Motion to Dismiss under Rule 12(b)(2) should be denied.

### C. The Court's exercise of personal jurisdiction over Potts-Kant complies with due process.

As Thomas has made out a *prima facie* showing of personal jurisdiction over Potts-Kant, the burden shifts to her to challenge the Court's exercise of that jurisdiction. *See Plumbing Srvs.*, 791 F.3d at 444. Potts-Kant bears a "heavy burden" in mounting a constitutional challenge to personal jurisdiction. *Id.*

The constitutional grounds for a defendant's challenge depends on the basis of the court's exercise of personal jurisdiction. Where service is accomplished by state long-arm statute, a defendant may challenge personal jurisdiction under the Due Process Clause of the Fourteenth Amendment, which, by its terms, applies only to states. *See ESAB Grp.*, 126 F.3d at 626. On the other hand, where service is accomplished by federal statute – such as the FCA – a defendant may only challenge personal jurisdiction under the Due Process Clause of the Fifth Amendment.

5

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 5 of 20

*See Plumbing Srvs.*, 791 F.3d at 444.

While both challenges involve due process analyses, the legal standards applicable to the Fifth versus the Fourteenth Amendments are different. *See Plumbing Srvs.*, 791 F.3d at 444. Under the Fourteenth Amendment, "due process requires only that in order to subject a defendant to a judgment *in personam* . . . he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002) (internal quotation omitted). On the other hand, "[t]o make out a Fifth Amendment challenge to personal jurisdiction, [a defendant must] show that the district court's assertion of personal jurisdiction over [her] would result in such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy evidenced by a nationwide service of process provision." *Plumbing Servs.*, 791 F.3d at 444 (internal quotation omitted); *see also ESAB Group*, 126 F.3d at 627.

### 1. Potts-Kant makes out an improper Fourteenth Amendment challenge to personal jurisdiction.

Potts-Kant has not carried her "heavy burden" of mounting a due process challenge to personal jurisdiction because she asserts the wrong legal standard. Citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), Potts-Kant asks the Court to undertake an analysis of due process considerations under the Fourteenth Amendment, which analyzes minimum contacts <u>with the forum state</u>. (*See* Dkt. 71, pp. 2-3.) "That standard, however, is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision." *Plumbing Srvs.*, 791 F.3d at 444; *see also Hogue*, 736 F.2d at 991 (holding the jurisdiction of "federal courts sitting in cases arising under federal law is not tested by the same yardstick as is the constitutional

26907/1/7894140v1

limitation upon" state law claims); *Autoscribe Corp. v. Goldman & Steinberg*, No. 94-1749, 1995 U.S. App. LEXIS 2848, at *7-8 (4th Cir. 1995) (noting "the applicable constitutional provision limiting a federal court's exercise of personal jurisdiction in federal questions cases is not the Fourteenth Amendment, but the Fifth Amendment.").

Potts-Kant's challenge to personal jurisdiction, therefore, misses the mark. As the FCA contains a nationwide service of process provision, the basis of this Court's exercise of personal jurisdiction is a federal statute, not the Virginia long-arm statute. A challenge to personal jurisdiction based on federal statute must be brought pursuant to the <u>Fifth</u> Amendment, by showing the Court's exercise of personal jurisdiction results in "extreme inconvenience or unfairness" that outweighs congressional policy. *Plumbing Servs.*, 791 F.3d at 444. Insofar as Potts-Kant asserts a challenge to personal jurisdiction under the <u>Fourteenth</u> Amendment, by arguing she does not have minimum contacts with Virginia, she has failed to show the Court's exercise of personal jurisdiction raises a <u>Fifth</u> Amendment concern. *See id.*

For this reason, Potts-Kant has not carried her "heavy burden," and the Court should deny her Motion to Dismiss pursuant to Rule 12(b)(2).

### 2. The Court's exercise of personal jurisdiction satisfies Fifth Amendment due process requirements.

Giving Potts-Kant the benefit of the doubt as a *pro se* litigant, her Motion could arguably be construed to mount a Fifth Amendment challenge insofar as she asserts 'unfairness' due to lack of Virginia counsel and distance from Danville, Virginia. These concerns are unavailing because the Court's exercise of personal jurisdiction does not gravely inconvenience Potts-Kant, nor does it place her at severe disadvantage in this case.

7

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 7 of 20

### a. Potts-Kant has had a reasonable opportunity to retain Virginia counsel.

Potts-Kant has not carried her heavy burden of asserting a Fifth Amendment challenge by choosing not to hire Virginia counsel. At the outset, Potts-Kant's argument regarding the expense of hiring Virginia counsel is lessened by her own admission that she has hired a North Carolina lawyer <u>to assist her with the present case</u>. (*See* Dkt. 70, ¶ 3.) Virginia and North Carolina counsel are not mutually exclusive. Even assuming her finances are zero-sum, Potts-Kant could readily redirect the funds she is paying her North Carolina counsel <u>to help her litigate in Virginia</u> and, instead, hire counsel licensed in Virginia. Therefore, the pertinent issue is not the expense of an attorney; it is whether Potts-Kant has chosen to hire Virginia counsel.

Potts-Kant cannot successfully avoid litigating in Virginia merely by choosing not to employ Virginia counsel. Simply put, "there is no constitutional right to counsel in civil cases." *Marks v. Cook*, No. 09-1053, No. 09-1056, 2009 U.S. App. LEXIS 22723, at *2-3 (4th Cir. Oct. 16, 2009); *see also Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (holding there is no right to counsel in civil cases). Thus, the presence or absence of counsel is not relevant to the due process inquiry. A relevant consideration, on the other hand, is whether Potts-Kant has been afforded the opportunity to hire an attorney. *See Cavallo v. Star Enter.*, No. 97-1707, 1998 U.S. App. LEXIS 15114, at *9 (4th Cir. July 7, 1998) ("our inquiry focuses on whether the litigant has been deprived of a reasonable opportunity to retain counsel.").

Potts-Kant cannot establish that she has been denied the meaningful opportunity to retain counsel. She was served with the Amended Complaint on October 16, 2016. (Dkt. 39.) On November 7, 2016, Potts-Kant moved this Court for an additional "sixty days to raise money to hire a Virginia lawyer to serve as local counsel or to represent me in this case." (Dkt. 45 ¶ 6.) Potts-Kant, therefore, has had at least 113 days – <u>over three and a half months</u> – to retain

8

Virginia counsel. Potts-Kant still has not hired an attorney licensed in Virginia. In *Cavallo v. Star Enter.*, the Fourth Circuit held that a period of "slightly more than one month" did not deprive *pro se* litigants of the Fifth Amendment due process opportunity to retain counsel. 1998 U.S. App. LEXIS 15114, at *9-11; *see also Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 257 (1st Cir. 1986) (holding a period of several months did not put an "unreasonable" time limit on a *pro se* litigant to hire counsel.) Therefore, Potts-Kant has had a reasonable opportunity to hire counsel.

### b. Potts-Kant is not "extremely inconvenienced" by having to drive 64 miles.

Potts-Kant's complaints regarding the 'inefficiencies' of litigating this case are equally unavailing. As an initial matter, Potts-Kant's incorporation of arguments set forth in the Motion to Transfer (Dkt. 68, 69) fails to recognize that any claimed 'inefficiencies' of persons other than herself are not relevant to the Fifth Amendment due process analysis. The relevant inquiry under the Due Process clause of the Fifth Amendment focuses on the moving party, namely Potts-Kant. *See Plumbing Srvs.*, 791 F.3d at 444.

The primary yardstick by which courts measure constitutional burden or inconvenience is geographic distance. However, the Fourth Circuit has held that "when a defendant is a United States resident, it is 'highly unusual . . . that inconvenience will rise to a level of constitutional concern.'" *Id.* at 444 (quoting *ESAB Grp.*, 126 F.3d at 627) (emphasis added). Thus, in *ESAB Grp., Inc. v. Centricut, Inc.*, the Fourth Circuit held that requiring the defendants to travel nearly 1,000 miles to defend a case did not pose Fifth Amendment due process concerns. 126 F.3d at 627. The court further noted that "[w]hile there is no doubt some inconvenience to the [New Hampshire] defendants in having to defend this action in South Carolina, it is not so extreme as to defeat the exercise of personal jurisdiction." *Id.* (emphasis added).

9

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 9 of 20

Similarly, in *River Cmty. Bank, N.A. v. Bank of N.C.*, this Court held that Danville, Virginia is not inconveniently distanced from High Point, North Carolina such as to raise constitutional concerns. No. 4:14-cv-00048, 2014 U.S. Dist. LEXIS 174824, at *16 (W.D. Va. Dec. 18, 2014). This Court noted that the distance from the Danville "courthouse is less than sixty miles from" the defendant's location. *Id.* The burden on the North Carolina defendant "to litigate in this Court would be negligible." *Id.* Thus, this Court has explicitly rejected the notion, advanced by nearby North Carolina residents, that litigating a case in Danville, Virginia raises due process concerns. *Id.*

Potts-Kant lives only 64.4 miles from the Danville courthouse.[4] Like that in *River Cmty. Bank*, such a short distance is "not 'so gravely difficult and inconvenient'" as to place Potts-Kant at a "severe disadvantage" in this litigation. *Id.* at *15 (quoting *Christian Sci. Bd. of Dirs. of First Christ Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001)). Therefore, Potts-Kant has not satisfied her "heavy burden" of showing that her place of residence gives rise to Fifth Amendment concerns. *Plumbing Servs.*, 791 F.3d at 444.

### D. The Court should deny the Motion to Dismiss under Rule 12(b)(2).

For the foregoing reasons, the Court has personal jurisdiction over Potts-Kant, and the Court's exercise of personal jurisdiction is constitutionally sound under the Fifth Amendment. Accordingly, the Court should deny Potts-Kant's Motion to Dismiss under Rule 12(b)(2).

## III. Venue is proper in the Western District of Virginia

Potts-Kant's Motion to Dismiss under Rule 12(b)(3) should be denied because venue is proper in the Western District of Virginia.

---

[4] *See* Google Maps, www.google.com/maps (listing the distance from Potts-Kant's residence at 9 Red Bluff Court, Durham, North Carolina 27713 to the Danville Federal Courthouse at 700 Main Street, Danville, Virginia 24541 as 64.4 miles) (last visited Feb. 4, 2017).

### A. Standard of Review – Rule 12(b)(3)

A motion to dismiss pursuant to Rule 12(b)(3) for "wrong" or "improper" venue "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 577 (2013). "To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

When assessing whether the plaintiff has made a *prima facie* showing, the court may consider facts and evidence outside of the pleadings. *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006). All of these facts and evidence are viewed in the light most favorable to the plaintiff. *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). Where the plaintiff has carried his burden and made a *prima facie* showing of venue, the court should deny a motion to dismiss under Rule 12(b)(3). *See, e.g.*, *Ashbury Int'l Grp., Inc. v. Cadex Def., Inc.*, No. 3:11CV00079, 2012 U.S. Dist. LEXIS 134878, *23, 27 (W.D. Va. Sept. 20, 2012) (denying motion to dismiss under Rule 12(b)(3) because "venue is proper in the Western District of Virginia.").

The FCA contains an expansive venue provision: venue lies in "any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a); *see Skinner*, 2014 U.S. Dist. LEXIS, at *11 n. 7 ("venue is proper because the FCA provides that venue is appropriate where, 'in the case of multiple defendants, any one defendant can be found, resides, transacts business . . .'") (quoting 31 U.S.C. § 3732(a)). Therefore, venue is appropriate under the FCA if venue lies as to any one defendant. *See id.*

26907/1/7894140v1

For example, in *Skinner v. Armet Armored Vehicles*, this Court poignantly addressed FCA venue. *Id.* The Court noted that defendant Armet was located and transacted business in Danville, Virginia. *Id.* Therefore, under the FCA, 31 U.S.C. 3732(a), this Court found that the Western District of Virginia was "an appropriate venue" as to all Defendants – even a Canadian resident. *Id.*

### B. The FCA provides for venue in the Western District of Virginia.

Venue lies in the Western District of Virginia as to at least two defendants – Duke and DUHS – because they may be found in and transact business in the Western District of Virginia. (Am. Compl. ¶ 12.) Duke, DUHS, and Foster have admitted as much. (Dkt. 69, p. 1 ("venue in the WDVA may technically be proper.").) Among other acts, DUHS transacted business at its Cardiovascular Surgery Center in Danville, Virginia. (Am. Compl. ¶ 12.) Like in *Skinner*, DUHS' actions alone are sufficient for venue to be appropriate in the Western District of Virginia. 2014 U.S. Dist. LEXIS 118784, at *11 n. 7 (stating venue was appropriate because Armet "was located and transacted business in Danville, Virginia."). For these reasons, the FCA provides for venue in the Western District of Virginia. *See* 31 U.S.C. § 3732(a).

Potts-Kant's reliance on *United States v. St. Joseph's Reg'l Health Ctr.* and *United States ex rel. Smith v. Yale Univ.* is misplaced. In both of those cases, the relator attempted to join multiple defendants, <u>each engaged in a separate and distinct fraud scheme</u>, into a single FCA action. *See United States v. St. Joseph's Reg'l Health Ctr.*, 240 F. Supp. 2d 882, 883-84, 2002 U.S. Dist. LEXIS 26194 (W.D. Ark. July 29, 2002) (noting that the relator filed a single FCA action against one hundred defendants, alleging each engaged in disparate schemes to defraud Medicare); *United States ex rel. Smith v. Yale Univ.*, No. 3:02cv1205, 2006 U.S. Dist. LEXIS 12304, at *16 (D. Conn. Mar. 7, 2006) (noting that the "[r]elator alleges separate frauds by each

12

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 12 of 20

hospital that are claimed to have been committed in the same manner."), *vacated in part by* 2006 U.S. Dist. LEXIS 24847 (D. Conn. Apr. 28, 2006). Both courts held that the FCA does not permit defendants accused of similar but <u>unrelated</u> conduct to be sued in the same district. *See Smith*, 2006 U.S. Dist. LEXIS 12304, at *19-20; *St. Joseph's Reg'l Health Ctr.*, 240 F. Supp. 2d at 886-87 (holding "that the Complaint in fact comprised one hundred different complaints -- each of which would have required its own basis for venue.").

In the present case, unlike in *Smith* and *St. Joseph's Reg'l Health Ctr.*, Thomas has alleged that Duke, DUHS, Foster, and Potts-Kant were each involved in the same integrated scheme to defraud the Government of grant funds. (Am. Compl. ¶¶ 3, 219-221, 313-317, 348-353.) The Defendants <u>were not</u> engaged in separate fraud schemes. As the Amended Complaint sets forth a single integrated scheme involving all Defendants, the FCA requires only that venue lie as to "any one defendant." 31 U.S.C. § 3732(a). Duke, DUHS, and Foster have admitted that venue lies in the Western District of Virginia as to at least Duke and DUHS. (Dkt. 69, p. 1.) Therefore, the Western District is an appropriate venue for this case. *See* 31 U.S.C. § 3732(a).

For the foregoing reasons, venue is proper in the Western District of Virginia as to all Defendants – including Potts-Kant – under the FCA, 31 U.S.C. § 3732(a). Therefore, the Court should deny Potts-Kant's Motion to Dismiss under Rule 12(b)(3).

**IV.    <u>Thomas has stated a claim for relief under the FCA.</u>**

Potts-Kant's Motion to Dismiss under Rule 12(b)(6) should be denied because Thomas has properly pled FCA claims against Potts-Kant.

### A.    Standard of Review – Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) is a vehicle by which a relator's allegations of fraud may be tested under Rule 9(b). *See Harrison v. Westinghouse Savannah River Co.*, 176

13

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW    Document 91    Filed 02/06/17    Page 13 of 20

F.3d 776, 783 n. 5 (4th Cir. 1999) ("*Harrison I*"). Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud." As the FCA seeks to penalize fraud against the government, the fraud element of FCA claims "must be pleaded with particularity" pursuant to Rule 9(b). *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013). Rule 9(b), however, does not require that factual allegations of a defendant's knowledge be pled with particularity. *Harrison I*, 176 F.3d at 784. There is no heightened pleading standard for knowledge. *Cf. Mayfield v. Nat'l Assoc. for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *see also United States v. Savannah River Nuclear Solutions, LLC*, No. 1:16-cv-00825, 2016 U.S. Dist. LEXIS 168067, at *29 (D.S.C. Dec. 6, 2016) (holding "[t]he allegations regarding [defendants'] knowledge are conclusory, but that is allowed under Rule 9(b).").

Instead, a plaintiff's allegations relating to knowledge need only satisfy the notice pleading requirements under Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). The Fourth Circuit has cautioned against undertaking a "mechanical" analysis requiring direct proof of each element of a claim. *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 287 (4th Cir. 2012).

> *Iqbal* and *Twombly* do not require a plaintiff to prove his case in the complaint. The requirement [of Rule 8] is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset. A "complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim. It need only 'allege facts sufficient to state elements' of the claim."

*Id.* at 291 (quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005)). "[I]t is sufficient that the facts in plaintiff[']s complaint[] reasonably support [] an inference." *Id.* at 287. Therefore, the Fourth Circuit has observed "that evaluating the sufficiency of a complaint is a

'context-specific task that requires the reviewing court to draw' not only 'on its judicial experience,' but also on 'common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Under this analysis, the movant may not arbitrarily ignore facts alleged in the complaint; rather, all properly pled facts, and reasonable inferences therefrom, must be taken as true for purposes of a motion to dismiss under Rule 12(b)(6). *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The court "must view the facts alleged in the light most favorable to the plaintiff." *Nathan*, 707 F.3d at 455. After considering all of these facts and inferences, the court should deny a motion under Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

FCA liability attaches to "any person who . . . <u>knowingly</u> presents, or <u>causes to be presented</u>, a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1)(A) (emphasis added). A person need not personally submit a claim to the government to be liable under the FCA; the FCA penalizes persons who knowingly <u>cause</u> false or fraudulent claims to be presented. *See Nathan*, 707 F.3d at 456 ("the critical question is whether the defendant <u>caused a false claim to be presented</u> to the government") (emphasis added). Furthermore, the FCA defines "knowingly" as "actual knowledge", "deliberate ignorance", or "reckless disregard." 31 U.S.C. § 3729(b)(1). Thus, Thomas may state a cause of action under 31 U.S.C. § 3729(a)(1)(A) by pleading facts showing that Potts-Kant acted with actual knowledge that she caused a false claim to be submitted to the government.

    **B.    Thomas has properly pled Potts-Kant's knowledge of a false claim.**

In her Motion to Dismiss under Rule 12(b), Potts-Kant's single argument attacks the allegations in the Amended Complaint relating to knowledge: not knowledge of the false or
15

fraudulent research, but <u>knowledge that a claim was presented to the federal government</u>. Potts-Kant does not dispute that she had actual knowledge that Duke presented claims containing her false or fraudulent data to the federal government; she merely argues that Thomas has wholly failed to plead her knowledge as to these claims. (Dkt. 71, p. 5 ("There is no allegation that I knowingly provided information to be used in any grant application. . . . does not even allege that I had any knowledge that the purportedly false data would be used to request money from the government.").) Thomas, however, has specifically pled that Potts-Kant knew that her false and fraudulent data would be presented to the federal government in grant applications and grant progress reports.

### 1. Thomas has pled that Potts-Kant had actual knowledge of claims.

Potts-Kant blatantly ignores Thomas' allegations that she acted with actual knowledge that the false and/or fraudulent data that she produced would be used in grant applications and grant progress reports submitted to the federal government to obtain research grant funding. Paragraph 315 of the Amended Complaint states: "<u>Defendants each knew</u> that research results and related publications were fundamental to the grant system, <u>and reported in grant applications and progress reports to secure grant funding</u>." (Am. Compl. ¶ 315 (emphasis added); *see also id.* ¶¶ 348-49.) The allegation directed at "each" Defendant includes Potts-Kant. Furthermore, Paragraph 316 states: "Potts-Kant knew that the reported research results in question were false and/or fabricated, having generated the results herself." (*Id.* ¶ 316.)

Together, these specific, factual allegations establish that Potts-Kant was aware that her fraudulent research results were reported in federal grant submissions. These facts must be taken as true for purposes of Rule 12(b)(6); Potts-Kant cannot simply ignore these allegations. *Cf. Robinson v. Davis*, No. 4:15-cv-00040, No. 4:15-cv-00041, 2015 U.S. Dist. LEXIS 173267, at

16

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 16 of 20

*9-10 (W.D. Va. Dec. 30, 2015) (rejecting a defendant's attempt to escape properly pled facts and reasonable inferences therefrom). As Potts-Kant was aware that the false and fraudulent data she produced were going to be reported in federal grants, she acted with actual knowledge that she was causing Duke to present false or fraudulent claims for payment. *See, e.g.*, *Savannah River Nuclear Sols., LLC*, 2016 U.S. Dist. LEXIS 168067, at *29 (holding that the allegations that defendants "knowingly submitted the invoices and claims and knew that their certifications were false" was sufficient to plead the defendants' knowledge and survive a motion to dismiss under Rule 12(b)(6)). For this reason alone, the Court should deny Potts-Kant's Motion to Dismiss under Rule 12(b)(6).

### 2. Thomas has pled a factual basis for Potts-Kant's actual knowledge.

Aside from Thomas' specific, factual allegations of Potts-Kant's actual knowledge, Thomas has pled additional facts showing that Potts-Kant provided false or fraudulent research results with actual knowledge that these data would be reported in federal grant submissions.

As described above, Duke was a grant mill; the singular purpose of Duke's research program was to obtain federal grant money. Federal funds were at play in every aspect of Duke's research program, including in the Foster Lab. All of the experiments performed by Potts-Kant and the Foster Lab were funded by federal grants. (Am. Compl. ¶¶ 28, 134.) Each of the publications containing Potts-Kant and the Foster Lab's fraudulent research was funded by federal grants. (*See id.* ¶¶ 165, 170, 176, 182, 187, 193, 199, 205, 211.) Potts-Kant was a co-author on most of these publications. (Dkt. 25-3 [Am. Compl. Ex. B].) Federal grants paid for the equipment that Potts-Kant used. (Am. Compl. ¶ 134.) <u>Federal grants paid Potts-Kant's salary</u>. (*Id.*)

Given the omnipresence of federal grant money in Duke's and the Foster Lab's research,

it is reasonable to infer that Potts-Kant knew that her false or fraudulent data would be used to in federal grant submissions. The federal government does not blindly hand out research grant money. The grant process is highly competitive. (*Id.* ¶ 2.) All Duke researchers – even lab technicians such as Potts-Kant and Thomas – knew that grant applications and progress reports were fundamental to the grant system and necessary to obtain grant funding. (*Id.* ¶ 315.) Grant applications require preliminary data in their research plans, and progress reports require a written description of the research results obtained during the grant funding period. (*Id.* ¶¶ 94, 102, 105.) Potts-Kant's own job description stated that she was responsible for assisting researchers in preparing "written reports and analyses setting forth progress." (*Id.* ¶ 23(c); Dkt. 25-1, [Am. Compl. Ex. A].) The reasonable inference to be drawn is that Potts-Kant knew that her false and/or fraudulent research results would be submitted in claims to the federal government, especially because <u>she helped to prepare the submissions</u>. (*See* Am. Compl. ¶ 23(c), Ex. A.) These facts and inferences establish that Potts-Kant produced false and/or fraudulent data with actual knowledge that her data would be submitted in federal grant documents.

### C. The Court should deny the Motion to Dismiss under Rule 12(b)(6).

For the foregoing reasons, Thomas has specifically pled the facts that Potts-Kant claims are absent: that she had actual knowledge that her fraudulent data would be reported in claims to the federal government. Therefore, the Court should deny Potts-Kant's Motion to Dismiss under Rule 12(b)(6).

## V. Conclusion

As set forth above, Thomas' Amended Complaint satisfies this Court's personal jurisdiction, venue, and pleading requirements. Personal jurisdiction is proper as to Potts-Kant because she has minimum contacts with the United States and her residence is not

18

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW Document 91 Filed 02/06/17 Page 18 of 20

unconstitutionally distant from Danville. Venue is proper as to Potts-Kant because venue is proper to Duke and DUHS. Finally, Thomas has stated a claim because he has properly pled Potts-Kant's knowledge under Rules 8 and 9(b). For these reasons, the Court should deny Potts-Kant's Motion to Dismiss in its entirety.

WHEREFORE the Relator Joseph M. Thomas moves the Court to deny Defendant Potts-Kant's Motion to Dismiss in all respects, or in the alternative, grant Thomas leave to amend, and grant such other relief that the Court may deem just, equitable, and proper.

Respectfully submitted this 6th day of February, 2017.

JOSEPH M. THOMAS

By: s/ Andrew M. Bowman_____

Matthew Broughton (VSB No. 25226)
Gregory J. Haley (VSB No. 23971)
Glenn W. Pulley (VSB No. 15677)
Cynthia D. Kinser (VSB No. 16817)
Michael J. Finney (VSB No. 78484)
John R. Thomas, Jr. (VSB No. 75510)
Andrew M. Bowman (VSB No. 86754)
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia  24022-0013
(540) 983-9300;
Fax: (540) 983-9400
broughton@gentrylocke.com
haley@gentrylocke.com
pulley@gentrylocke.com
kinser@gentrylocke.com
finney@gentrylocke.com
jthomas@gentrylocke.com
bowman@gentrylocke.com

*Counsel for Relator Joseph M. Thomas*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February, 2017, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to counsel of record in this matter, and by U.S. Mail upon the following parties:

Erin N. Potts-Kant
9 Red Bluff Court
Durham, North Carolina 27713

s/ Andrew M. Bowman

20

26907/1/7894140v1

Case 1:17-cv-00276-CCE-JLW   Document 91   Filed 02/06/17   Page 20 of 20