IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

The United States of America, ex rel. Joseph M. Thomas,

   *Plaintiff*,

v.                                                 Civil Action No. 4:13-CV-00017

Duke University, Duke University Health System, Inc., William M. Foster, Ph.D., and Erin N. Potts-Kant,          **ORAL ARGUMENT REQUESTED**

   *Defendants*.

**DEFENDANTS DUKE UNIVERSITY AND DUKE UNIVERSITY HEALTH SYSTEM, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT WITH PREJUDICE**

J. Benjamin Rottenborn
Virginia Bar No. 84796
Woods Rogers PLC
10 South Jefferson Street
Suite 1400
Roanoke, VA 24011

Frederick Robinson
District of Columbia Bar No: 367223
*Admitted Pro Hac Vice*
Carol Poindexter
Missouri Bar No: 45067
Kansas Bar No: 18021
District of Columbia Bar No. 987073
*Admitted Pro Hac Vice*
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501

      *ATTORNEYS FOR DEFENDANTS*
   *Duke University and Duke University Health System, Inc.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT............................................................................................................. 1

    A. Defendants have stated the correct legal standard for pleading a false claim for payment, and Relator's Amended Complaint fails under this standard ....................................................................................................... 1

    B. Relator has not adequately pleaded falsity under Federal Rule of Civil Procedure 8(a) or 9(b) and cannot amend his pleadings by introducing new theories of falsity in his opposition brief ............................................................ 6

        1. Relator's allegations of false scientific data are not supported by well-pleaded facts, nor are they pleaded with particularity under Federal Rule of Civil Procedure 9(b).................................................... 6

        2. Relator cannot allege new theories of falsity in his opposition brief to avoid the consequences of Fourth Circuit case law ............................ 8

    C. Relator has not adequately pleaded materiality under Rule 8(a) or 9(b) and thus has failed to state a claim under Rule 12(b)(6) or plead fraud with particularity under Rule 9(b).................................................................................. 10

    D. The FCA is not the proper vehicle to police minor contractual violations for all grant claims submitted by Defendants after March 2013 .......................... 12

III. CONCLUSION......................................................................................................... 13

# TABLE OF AUTHORITIES
**Page(s)**

**Cases**

*Aziz v. Alcolac, Inc.*,
　658 F.3d 388 (4th Cir. 2011) .................................................................................................7

*United States ex rel. Badr v. Triple Canopy*,
　775 F.3d 628 (4th Cir. 2015), *vacated by Triple Canopy, Inc. v. United States
　ex rel. Badr*, 136 S.Ct. 2504 (June 27, 2016).............................................................12

*United States ex rel. Grubbs v. Kanneganti*,
　565 F.3d 180 (5th Cir. 2009) ........................................................................................3, 4, 5

*United States ex rel. Hagood v. Riverside Healthcare Ass'n, Inc.*,
　No. 4:11-cv-109, 2015 WL 1349982 (E.D. Va. Mar. 23, 2015)............................................2, 9

*Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*,
　No. 1:13-CV-1129, 2014 WL 1928211 (E.D. Va. May 13, 2014) ............................................2

*Kassin v. Select Grp., LLC*,
　No. 1:16-CV-1263-GBL-TCB, 2016 WL 7331556 (E.D. Va. Dec. 16, 2016)...........................8

*Marsh v. Virginia Dep't of Transp.*,
　No. 6:14-CV-00006, 2014 WL 6833927 (W.D. Va. Dec. 3, 2014)...........................................8

*United States ex rel. Milam v. The Regents of the Univ. of California*,
　912 F. Supp. 868 (D. Md. 1995)...............................................................................................8

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
　707 F.3d 451 (4th Cir. 2013) ..............................................................................2, 3, 4, 5, 6

*United States ex rel. Palmieri v. Alpharma, Inc. et al.*,
　928 F. Supp. 2d 840 (D. Md. 2013)..........................................................................................2

*United States v. Science Applications Int'l Corp.*,
　626 F.3d 1257 (D.C. Cir. 2010)..............................................................................................13

*Wag More Dogs, LLC v. Cozart*,
　680 F.3d 359 (4th Cir. 2012) ...................................................................................................7

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
　525 F.3d 370 (4th Cir. 2008) ...................................................................................................7

## I. INTRODUCTION

In Relator's Opposition to Duke University ("Duke") and Duke University Health System, Inc.'s[1] ("DUHS" and collectively "Defendants") Motion to Dismiss, Relator has (A) misstated the Fourth Circuit's requirements for pleading fraud with particularity under Federal Rule of Civil Procedure 9(b); (B) ignored his actual pleadings by introducing new theories of falsity; (C) attempted to clarify his pleading of materiality by relying on arguments that have no factual support; and (D) claimed with no plausible basis that ***all grant claims*** submitted by Duke after March 2013 included false certifications. Most importantly, Relator still has not plausibly explained how allegedly fraudulent research results created by a single research technician that found their way into publications also found their way into grant applications filed by university researchers. This reply brief responds to the above arguments, and Defendants respectfully request that the Court dismiss Relator's Amended Complaint for the reasons set forth below and in their Memorandum in Support of Their Motion to Dismiss.[2] *See* Dkt. 74.

## II. ARGUMENT

### A. <u>Defendants have stated the correct legal standard for pleading a false claim for payment, and Relator's Amended Complaint fails under this standard.</u>

Relator claims that Defendants have applied the wrong legal standard governing the pleading requirements for Rule 9(b) in the Fourth Circuit. Although Defendants agree that the Fourth Circuit has not expressly addressed the question of whether a relator must identify actual,

---

[1] Relator continues to lump DUHS in with Duke to claim that DUHS is a proper party to this action. *See* Dkt. 93 at 68. Because Relator has not specifically pleaded any allegations against DUHS specifically, his FCA allegations against DUHS fail for the reasons set forth in Defendants' Memorandum in Support of their Motion to Dismiss. *See* Dkt. 74 at 32-35.

[2] Defendants decline to repeat the allegations set forth in Relator's Amended Complaint in this reply. Relator spent more than 71 pages in his Amended Complaint and 31 pages in his opposition brief stating his FCA allegations and speculative conclusions. *See* Dkt. 25; Dkt. 93. Defendants prefer to argue the legal basis on which Relator's conclusory allegations fail to meet Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), rather than inundate the Court with yet another recitation of the facts.

-1-

representative false claims in a complaint in order to comply with Rule 9(b)'s heightened pleading standard, *see* Dkt. 74 at 25. n.10, courts within the Fourth Circuit have concluded that the Fourth Circuit's ruling in *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc*., 707 F.3d 451 (4th Cir. 2013) requires the identification of at least one specific false claim. *See Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.,* No. 1:13-CV-1129, 2014 WL 1928211, at *7-8 (E.D. Va. May 13, 2014); *see also United States ex rel. Palmieri v. Alpharma, Inc. et al.*, 928 F. Supp. 2d 840, 855 (D. Md. 2013) (finding that the *Nathan* court "expressly adopted the position staked out by the Eleventh Circuit in *Clausen*[,]" which requires relators to plead a representative claim example); *United States ex rel. Hagood v. Riverside Healthcare Ass'n, Inc.*, No. 4:11-cv-109, 2015 WL 1349982, at *7-8 (E.D. Va. Mar. 23, 2015) (stating that "in considering the interplay between the FCA and Rule 9(b), the Fourth Circuit has agreed with the Eleventh Circuit" that merely describing a "private scheme in detail but then to allege simply and without any stated reason" that a claim must have been submitted is not enough to survive a Rule 9(b) motion to dismiss). Moreover, the *Nathan* court specifically "decline[d] to adopt Relator's argument for a more lenient application" of Rule 9(b), under which alleging the "existence of a fraudulent scheme that supports the inference that false claims were presented to the government" would be enough to satisfy Rule 9(b)'s particularity requirements. *See Nathan*, 707 F.3d at 456. Thus, it is without question that a relator in an FCA case faces a heightened pleading standard, and the vast weight of authority demands that a relator plead a false claim with particularity. As explained below, Relator does not meet this standard.

In support of his argument, Relator relies upon the *Nathan* court's acknowledgement that there might be limited cases where a relator could still satisfy Rule 9(b)'s heightened pleading standard without alleging specific false claims as long as the relator alleges a "fraud scheme that

2

necessarily leads to the plausible inference that false claims" were submitted to the government. *See* Dkt. 93, at 32. However, the limited cases to which the *Nathan* court refers are ones in which, "[b]ased on the ***nature of the schemes*** alleged in many of those cases, specific allegations of the defendant's fraudulent conduct ***necessarily led*** to the plausible inference that false claims were presented to the government." *Nathan*, 707 F.3d at 457 (emphasis added); *see also United States ex rel. Szymoniak v. Am. Home Mortg. Servicing, Inc.*, No. 15-1720, 2017 WL 634705, at *2 (4th Cir. Feb. 16, 2017) (finding that the relator's complaint, while alleging an "elaborate scheme . . . did not provide facts to show that this scheme actually resulted in the submission of specific false claims" nor create "a reasonable inference that false claims ***necessarily*** were submitted.")(emphasis in original).

As an example, the *Nathan* court discussed and then distinguished the factual scenario in *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), one of the leading cases in support of a relaxed Rule 9(b) pleading standard in FCA cases. In *Grubbs*, the relator alleged a fraudulent billing scheme whereby psychiatrists would bill for "face-to-face" weekend hospital visits that never occurred. *Grubbs*, 565 F.3d at 184. In addition to describing this scheme in detail, the complaint contained at least one allegedly false billing act for each doctor in the following form: a specific doctor had billed the government for psychotherapy services on a particular date and with a particular CPT code despite medical records indicating that the doctor had not provided psychotherapy on that date. *Id.* at 184-85.

After holding that a relator does not have to plead representative examples of actual claims submitted to the government, the Fifth Circuit found that, "because the complaint included the dates of specific services that were recorded by the physicians but never were provided, such allegations constituted 'more than probable, nigh likely, circumstantial evidence

3

that the doctors' fraudulent records caused the hospital's billing system in due course to present fraudulent claims to the Government.'" *Nathan*, 707 F.3d at 457 (*quoting Grubbs*, 565 F.3d at 192). Based on these facts, the *Grubbs* court concluded that the allegations permitted no conclusion other than fraud:

> It would stretch the imagination to infer the inverse; that the defendant doctors go through the charade of meeting with newly hired doctors to describe their fraudulent practice and that they continually record unprovided services only for the scheme to deviate from the regular billing track at the last moment so that the recorded, but unprovided, services never get billed. That fraudulent bills were presented to the Government is the ***logical conclusion*** of the particular allegations in Grubbs' complaint[.]

*Grubbs*, 565 F.3d at 192 (emphasis added). Essentially, what the Fifth Circuit found is that there was ***no other plausible explanation*** for doctors to have created allegedly false records for services that were never provided other than to submit the bills for payment. As a result, the court found that the relator had met Rule 9(b)'s particularity requirement.

Despite acknowledging that there are situations in which it might find allegations such as those in *Grubbs* sufficient for pleading the particulars of Rule 9(b), the Fourth Circuit found that the allegations in *Nathan* were insufficient for the court to draw the "logical conclusion" that the defendant had submitted false claims to the government. Specifically, in distinguishing *Grubbs*, the *Nathan* court found that it could not reasonably infer from the relator's complaint "that a Medicare patient who has received a prescription for an off-label use actually filled the prescription and sought reimbursement from the government [because . . .] '[i]t may be that physicians prescribed [the drug] for off-label uses only where the patients paid for it themselves or when the patients' private insurers paid for it.'" *Nathan*, 707 F.3d at 460 (citation omitted).

Because there were plausible inferences that existed other than the conclusion that a false claim for payment was necessarily submitted, the court could not infer that any prescription a

4

federal beneficiary received for an off-label use must have been filled and thus must have been presented to the government. *Id.* at 461 (finding the relator's assumptions too "speculative in nature"). In concluding that the relator had not pleaded enough facts to allow the court to draw such a plausible inference, the court noted that, unlike *Grubbs*, the relator's "claim does not involve an integrated scheme in which presentment of a claim for payment was a ***necessary*** result." *Id.* (emphasis added).

Relator's allegations of "widespread research misconduct" are unlike the allegations in *Grubbs* where there was no other plausible consequence resulting from the alleged misconduct than the submission of false claims to the government for payment. Rather, similar to the scenario in *Nathan*, the allegations in Relator's Amended Complaint do not lend themselves to the "logical conclusion" that false claims were actually submitted to the government for payment. Scientific data, unlike false records of medical services that were never performed, are not created for the primary purpose of securing payment. Instead, the primary purpose of generating scientific data is to test a scientific hypothesis, which can have many different results. Thus, in contrast to the allegations in *Grubbs* where there could be no plausible reason to create false records for services not rendered other than to submit a claim for payment, scientific data may be created for multiple purposes, including for teaching, for use at seminars, to test a novel scientific theory, *or* to include the results in a publication or grant document. It is, therefore, too speculative to presume that there was a fraudulent scheme in which ***all*** scientific data performed by Potts-Kant were not only false, but were also included in ***all*** claims for ***all*** grants listed in Exhibits C and C-1 to Relator's Amended Complaint.

What Relator argues is exactly what the Fourth Circuit in *Nathan* warned against – he has "describe[d] a private scheme in detail but then [] allege[d] simply and without any stated reason

5

. . . that claims requesting illegal payments *must have* been submitted, *were likely* submitted or *should have been* submitted to the Government." *Nathan*, 707 F.3d at 456-57 (internal quotations omitted) (emphasis added). Because Defendants' alleged conduct, "*could* have led, but *need not necessarily* have led, to the submission of false claims," Relator is required under Fourth Circuit case law to "allege with particularity that *specific false claims actually*[3] were presented to the government for payment."[4] *Id.* (emphasis added). For the reasons set forth in Defendants' Memorandum in Support of their Motions to Dismiss, Relator has not met this particularity standard, and his Amended Complaint should therefore be dismissed.

B. **Relator has not adequately pleaded falsity under Federal Rule of Civil Procedure 8(a) or 9(b) and cannot amend his pleadings by introducing new theories of falsity in his opposition brief.**

Relator's FCA allegations in Counts I through III are based on two types of falsity: (1) false scientific data and (2) false certifications. However, neither type of falsity is adequately alleged under the Federal Rules of Civil Procedure, and Relator cannot introduce new theories of falsity in his opposition brief that were not alleged in his Amended Complaint.

---

[3] It is irrelevant that Relator mentions the SPA grant's June 2013 Progress Report and September 2013 resubmission as alleged claims in his Amended Complaint. *See* Dkt. 93, at 43. As Defendants explain in their Memorandum in Support of their Motion to Dismiss, Relator's Amended Complaint fails to provide the required link between the allegedly false data included in publications and the same data's inclusion in those grant claims. Therefore, Relator has not adequately alleged the submission of a particular false claim to the government.

[4] Relator argues that Defendants' Motion to Dismiss does not properly address presentment as a separate element of the FCA. *See* Dkt. 93, at 35-36. Relator, however, overemphasizes the presentment element to distract from his flawed falsity allegations. While presenting a claim for payment is a separate element under the FCA, liability attaches only when that claim for payment is actually *false*. *Nathan,* 707 F.3d at 456 ("[T]he critical question is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme.").

6

1. **Relator's allegations of false scientific data are not supported by well-pleaded facts, nor are they pleaded with particularity under Federal Rule of Civil Procedure 9(b).**

Relator claims that his "falsity allegations must be taken as true" because they are "about black-and-white issues of intentional fraud (not scientific disagreements or protocols)." *See* Dkt. 93, at 52. Relator cannot escape the fact that his Amended Complaint is devoid of plausible factual support for his speculative legal conclusion that Defendants engaged in "intentional fraud." *See e.g., Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (providing that "statements of bare legal conclusions are not entitled to the assumption of truth and are insufficient to state a claim") (internal quotations omitted). Therefore, although Relator complains that Defendants have ignored Relator's allegations, neither Defendants nor the Court is required to accept as true Relator's speculative, conclusory allegations and assumptions about the allegedly fraudulent nature of Potts-Kant's data. *See e.g.*, *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (finding that although the Court is required to review "the facts in the light most favorable to the plaintiff" on a motion to dismiss, it "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or argument") (internal quotations omitted).

Spending 31 pages in his opposition brief repeating the same conclusory allegations from Relator's Amended Complaint does not make Relator's allegations any more plausible. Relator must, at a minimum, provide the ***who, what, where, when, and how*** of the ***false*** claim. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). By not providing the specifics of ***who*** submitted the false claim, ***what*** specific grant application or progress report contained the false claim, ***when*** the false claim was submitted, or ***how*** the claim was false, and instead relying on conclusory statements that the Court is not required to

7

accept as true, Relator has failed to meet the particularity requirements of Rule 9(b), and his Amended Complaint should be dismissed as a result.

Additionally, Relator's Amended Complaint is based on a fundamental misunderstanding of science. Failure to replicate an experiment does not necessarily imply that the original experiment is fraudulent. Rather, there are numerous plausible explanations for why a scientific experiment may not replicate due to the many variables considered in an experiment. Moreover, as stated previously, there is no guarantee in science that data from an experiment will support a researcher's intended hypothesis or be statistically significant. In these situations, the results may indicate the need for a researcher to take his or her research in another direction; it does not automatically indicate that the "experimental results were intentionally falsified, fabricated, or are fraudulent[,]" as Relator claims. *See* Dkt. 93, at 39.

### 2. Relator cannot allege new theories of falsity in his opposition brief to avoid the consequences of Fourth Circuit case law.

In his opposition brief, Relator introduces a new theory to explain why literally true bibliography listings are false under the FCA in order to distinguish the holding in *United States ex rel. Milam v. The Regents of the Univ. of California,* 912 F. Supp. 868, 883 (D. Md. 1995) that accurate citations to publications cannot give rise to FCA liability. To avoid the consequences of *Milam*, Relator contends that article citations do not merely represent the literal truth that an article was published, but, in grant applications, also represent that the results of the article support the need for the proposed research; and, in progress reports, that the results of the article were paid for by the grant and justify the need for continued funding. *See* Dkt. 93, at 51. This is an entirely new theory of falsity that was not alleged in Relator's Amended Complaint, and thus cannot be properly introduced in an opposition brief. *See e.g.*, *Marsh v. Virginia Dep't of Transp.*, No. 6:14-CV-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) ("Plaintiff

8

cannot assert new claims by raising them in her brief in opposition to the Defendant's motion to dismiss."); *Kassin v. Select Grp., LLC*, No. 1:16-CV-1263-GBL-TCB, 2016 WL 7331556, at *5 (E.D. Va. Dec. 16, 2016) (declining to consider new legal theories introduced in the plaintiff's opposition brief in response to the defendants' motion to dismiss).

Even assuming that the Court could properly consider this new theory of falsity, Relator has not pleaded any specifics in support of this theory, such as ***what*** publications were cited in ***which*** research plans, ***when*** these publications were cited and for ***what*** purpose, or ***how*** the citations to these publications were material to the research plan. *See Hagood*, 2015 WL 1349982, at *13-14 (dismissing "Relators' medication-pathways allegations [because they] do not allow the [c]ourt to plausibly infer the 'when' or the 'how' of the alleged false claims."). Thus, Relator's claims would still not survive Rule 9(b)'s heightened pleading standard under this new theory of falsity.

Moreover, with respect to Relator's claim that citations to articles in progress reports "justify the need for continued funding," *see* Dkt. 93 at 51, Relator has stretched the meaning of the regulations to which he cites. There is nothing in those regulations suggesting that citations to articles in progress reports represent a justification for continued funding. Rather, by Relator's own admission, the regulations simply require the grantee institution to "report publications resulting directly from the grant," and, if the grantee institution has no publications to report, to include such a statement. *See* Dkt. 25. ¶ 104 (citing HHS, PHS, Non-Competing Continuation Progress Report (PHS 2590), § 2.6(E) "Publications," p. 16)); *see also* ¶ 103 (stating that "the grantee institution must provide complete references to the publications, manuscripts accepted for publication, patents, and other printed materials that have resulted from the project since it was last reviewed competitively") (citing HHS, PHS, Grant Application (PHS

9

398), Part I, § 5.5.5, "Bibliography and References Cited/Progress Report Publication List," p. 1-48; SF 424 (R&R); Application Guide for NIH and Other PHS Agencies, Part I, § 5.5 "PHS 398 Research Plan Form," p. 114.)). It was only after Defendants pointed out in their Motion to Dismiss that literally true bibliography listings cannot give rise to FCA liability under *Milam* that Relator introduced the new theory that these listings were false because they represented a justification for continued funding. However, Relator has not cited any legal support for this argument, and he cannot amend his pleadings by introducing this new theory in his opposition brief.

Similarly, with respect to Relator's false certification theory, Relator asserts another novel theory not alleged in his Amended Complaint. Specifically, in his opposition brief, Relator states for the first time that the certifications made in the Exhibit C and C-1 grants are false "independent of whether the fraudulent research results identified in the publications were also reported in these grant documents." *See* Dkt. 93 at 42. According to Relator, the certifications are false because "grant funds were used to disseminate information that is deliberately false or misleading" through publications that included allegedly false data. *Id.* at 42 (internal quotations omitted). However, even if it were proper to introduce this new theory of liability in his opposition brief, the theory fails because it is based on nothing more than the conclusory allegation that the grants in Exhibit C and C-1 included such false certifications. Again, this is insufficient to state a claim under Federal Rule 12(b)(6).

### C. Relator has not adequately pleaded materiality under Rule 8(a) or 9(b) and thus has failed to state a claim under Rule 12(b)(6) or plead fraud with particularity under Rule 9(b).

Relator has also not adequately pleaded materiality to survive Defendants' Memorandum in Support of their Motions to Dismiss. In his opposition brief, Relator tries to clarify that his Amended Complaint established materiality in the following three ways: (1) the grant

10

applications and progress reports required research results to be reported, and all certifications made therein were a condition of grant payment; (2) the data resulting from flexiVent and Multiplex experiments were "fundamental" to current pulmonary research studies and "central" to the hypotheses asserted in grant applications and progress reports; and (3) Defendants tried to "conceal the research fraud from the funding agencies" and this "intentional cover-up further evidences the fraud's materiality to grant funding." Dkt. 93, at 57-58. Each of these arguments fails for the reasons set forth below.

First, whether a regulation is labeled a condition of funding is not dispositive, as Relator admits. *See* Dkt. 93, at 56. Rather, as Defendants stated in their Memorandum in Support of their Motion to Dismiss, *Escobar* describes several factors that are relevant to the FCA materiality analysis. *See* Dkt. 74 at 18-20 ("The Supreme Court stated one way a relator could establish materiality would be by showing that 'the government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.'") (citing *Escobar*, 136 S. Ct. at 2003). Instead of responding to the arguments made within Defendants' Memorandum in Support of their Motion to Dismiss, Relator continues to claim that the regulations allegedly violated were conditions of payment to support his pleading of materiality. However, as set forth in Defendants' Memorandum in Support of their Motion to Dismiss, Relator must do more than merely allege that the government would not have paid a defendant's claims if it had known of a failure to meet a requirement. *See* Dkt. 74, at 19-20.

Second, even if Relator's allegation that flexiVent and Multiplex data were "fundamental" to pulmonary research is true, Relator has not pleaded any facts, other than conclusory ones, to support his contention that flexiVent and Multiplex data were "central" to

11

any of the hypotheses of the grants identified in Exhibit C and C-1.  In fact, Relator has pleaded ***no facts*** whatsoever about the specific hypotheses of any of the identified grants.  Instead, he baldly asserts, without any stated reason for his belief, that "[t]he false and fabricated data reported by Potts-Kant . . . ***supported the stated hypotheses*** and desired outcome[.]" *See* Dkt. 25 ¶ 333 (emphasis added).  Without knowing what the "stated hypotheses" were for each grant, there is simply no basis for the allegation that flexiVent or Multiplex data played ***any*** role in these grants, much less a ***central*** role as Relator claims.  Indeed, even if flexiVent or Multiplex data played ***some*** role in each of the identified grants, the inclusion of such data does not necessarily lead to a plausible inference that they played a ***central*** or ***material*** role, particularly when Relator has not alleged any facts regarding the "stated hypotheses" for the identified grants.

Third, Relator has not pleaded any facts to support his conclusory allegation that Defendants tried to "conceal the research fraud from [the] funding agencies."  *See* Dkt. 93 at 58.  Conclusory allegations such as this are not evidence of materiality, particularly when Relator relies only on the vacated decision of *United States ex rel. Badr v. Triple Canopy*, 775 F.3d 628, 638 (4th Cir. 2015), *vacated by Triple Canopy, Inc. v. United States ex rel. Badr*, 136 S.Ct. 2504 (June 27, 2016)  as support for his argument.

### D. The FCA is not the proper vehicle to police minor contractual violations for *all grant claims* submitted by Defendants after March 2013.

In his opposition brief, Relator has clarified that his false certification claims in Counts IV and V are based solely on the Defendants' alleged conduct after March of 2013 and that the grants at issue are not only the grants listed in Exhibits C and C-1, but also include ***all grant claims*** submitted after this date.  *See* Dkt. 93 at 64, n. 194.  Specifically, Relator alleges that once Defendants became aware of Potts-Kant's alleged misconduct in March 2013, "Duke's

12

certifications were false" because Duke continued to "certif[y] compliance with its assurances and the [r]egulations in grant applications and progress reports presented to NIH, and in the Institutional Assurance and Annual Reports submitted to ORI." *Id.* at 64-65. Essentially, what Relator alleges is that **all grant claims** Duke or DUHS has submitted to **any** government agency since March 2013 and presumably into perpetuity include false claims, even if such grants had nothing to do with (1) the Pulmonary Department; (2) flexiVent or Multiplex data; or (3) Foster and/or Potts-Kant's research. *Id.* at 67 (alleging that the "well-pleaded facts show that **every** certification of compliance that Duke executed and submitted to NIH and ORI after March 2013 was false") (emphasis in original). It would be unreasonable to allow Relator's false certification claims in Counts IV and V to survive Defendants' Motion to Dismiss for failure to plead fraud with particularity upon such a broad theory that alleged misconduct stemming from **one laboratory** in **one department** led to false certifications of compliance with assurances for **all grant claims** awarded to Defendants after March 2013.

Nor does the FCA contemplate such a harsh result. As the Supreme Court stated in *Escobar*, the FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *See Escobar*, 136 S. Ct. at 2003 (internal citation and quotations omitted). "By enforcing [the materiality] requirement rigorously, courts will ensure that [defendants] will not face 'onerous and unforeseen FCA liability' as the result of noncompliance with any of 'potentially hundreds of legal requirements established by contract." *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010). Because any alleged certifications made for grant claims outside of those potentially impacted by Potts-Kant's alleged misconduct would be neither false nor material, Defendants request that the

13

Court reject Relator's claim that ***all grant claims*** submitted after March 2013 are at issue pursuant to a false certification theory of liability.

## III. CONCLUSION

For the reasons set forth above and in Defendants' Memorandum in Support of their Motion to Dismiss, Defendants Duke University and DUHS respectfully request that the Court grant their Motion to Dismiss Relator's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) and failure to plead fraud with particularity pursuant to Rule 9(b).

Dated:    February 24, 2017                Respectfully submitted,

By: *s/ J. Benjamin Rottenborn*
J. Benjamin Rottenborn (VSB #84796)
WOODS ROGERS PLC
10 S. Jefferson Street, Suite 1400
P.O. Box 14125
Roanoke, Virginia 24011
Telephone: (540) 983-7540
Facsimile: (540) 983-7711
brottenborn@woodsrogers.com

Frederick Robinson
District of Columbia Bar No: 367223
*Admitted Pro Hac Vice*
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501
(202) 662-0200
Fax: (202) 662-4643
Email: rick.robinson@nortonrosefulbright.com

Carol Poindexter
Missouri Bar No: 45067
Kansas Bar No: 18021
District of Columbia Bar No. 987073
*Admitted Pro Hac Vice*
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501
(202) 662-0200
Fax: (202) 662-4643
Email: carol.poindexter@nortonrosefulbright.com

***ATTORNEYS FOR DEFENDANTS***
***Duke University and Duke University Health System, Inc.***

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2017 this document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to counsel of record in this matter in accordance with Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 7(g), and by U.S. Mail upon the following party:

Erin N. Potts-Kant
9 Red Bluff Court
Durham, North Carolina 27713

*s/ J. Benjamin Rottenborn*
J. Benjamin Rottenborn