IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, ex rel. JOSEPH M. THOMAS, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17-CV-276 |
| | ) | |
| DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEM, INC., WILLIAM M. FOSTER, PH.D, AND ERIN N. POTTS-KANT, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Duke University and Duke University Health System, two of the defendants in this *qui tam* lawsuit, seek to seal various exhibits and briefs filed in connection with a motion for sanctions and a related motion to seal. Primarily at issue is whether certain email notes, interrogatory answers, and the briefs that discuss them contain information protected by the attorney-client privilege. Duke also seeks to redact or seal certain exhibits that Duke contends contain personnel information or are subject to confidentiality requirements under federal regulations.

Duke's motions to seal will be granted for five documents that do not qualify as judicial records and therefore have no right to public access attached. Otherwise, Duke has not submitted sufficient evidence in support of its claims of confidentiality and has not shown why its interest in keeping the information secret is more important than the

public interest in access to court records.  For these remaining documents, Duke's motions are denied.

## I.      Procedural Background

In this *qui tam* lawsuit, plaintiff-relator Joseph M. Thomas contends that the defendants violated the False Claims Act in numerous ways in connection with allegedly falsified and non-existent research data created, maintained, and submitted in connection with government grants.  Duke filed a motion for sanctions, Doc. 159, contending that counsel for the relator engaged in impermissible *ex parte* contacts with Duke employees. That motion has since been denied.  *See* Text Order 08/03/2018 *and* Memorandum Opinion entered contemporaneously with this order.

In connection with the sanctions motion, Duke sought to file certain exhibits under seal, asserting they contained information covered by the attorney-client privilege.  Doc. 161; Doc. 225-2.  The relator objected to the motion to seal, Doc. 193, and responded to the motion for sanctions, Doc. 189 (redacted at Doc. 185).[1]  Duke seeks to seal some of the exhibits submitted by the relator, as well as references to these exhibits in the relator's brief.  *See* Doc. 201; Doc 196;[2] Doc. 225.  As to these additional materials, Duke

---

[1] In the first citation for each exhibit or brief at issue, the Court will provide a description of the document and identify the electronic CM-ECF docket number where the sealed unredacted exhibit or brief can be located.  For those documents where Duke does not seek to seal the entire document, the Court will also provide the ECF docket number for the publicly available, redacted version in a parenthetical.  When and if the document or brief is referenced again, the Court will provide the ECF docket number for the sealed, unredacted exhibit alone, without the description or the docket number to the redacted version.

[2] The relator originally filed the motions to seal these documents, Doc. 174, Doc. 178, and Doc. 188, as required by LR 5.4(c) after conferring with Duke to confirm the degree of

continues to rely on the attorney-client privilege and also contends that some of the exhibits are subject to confidentiality requirements in federal regulations or contain confidential personnel information. *See* Doc. 225-3, 225-4.

Accordingly, at issue are three sets of documents: (*i*) exhibits to Duke's Motion for Sanctions, Doc. 159, (the "Sanctions Exhibits"),[3] (*ii*) parts of the relator's brief in opposition to Duke's motion for sanctions, Doc. 189, and some exhibits to the opposition brief (the "Sanctions Opposition Materials"),[4] and (*iii*) exhibits to the Relator's Superseding Opposition to Duke's Motion to Seal, Doc. 193, (the "Sealing Opposition Exhibits").[5] *See* Doc. 225-1 (Flowchart of motions to seal).

---

confidentiality. Duke has filed briefs in support of these motions, Doc. 201 and Doc. 196, as required under LR 5.4(d).

[3] The Sanctions Exhibits are listed in the chart at Doc. 225-2, and include:
  - The relator's interrogatory responses, Doc. 166 (redacted at Doc. 159-2);
  - The relator's redacted interrogatory responses, Doc. 165 (redacted at Doc. 159-5);
  - The relator's email notes, Doc. 164 (sought to be sealed in their entirety);
  - A meet and confer letter, Doc. 168 (redacted at Doc. 159-10);
  - The relator's second supplemental interrogatory responses, Doc. 167 (redacted at Doc. 159-11); and
  - The Schneider affidavit, Doc. 163 (redacted at Doc. 159-12).

[4] The Sanctions Opposition Materials are listed in the chart at Doc. 225-4, and include:
  - Relator's Opposition to the Duke Motion for Sanctions, Doc. 189 (redacted at Doc. 185);
  - The relator's declaration, Doc. 190 (redacted at Doc. 186);
  - The deposition of Barbara Theriot, Doc. 189-6 (redacted at Doc. 185-6);
  - The relator's interrogatory responses, Doc. 191-8 (redacted at Doc. 187-8);
  - Deposition Exhibit 718, Doc. 189-11 (sought to be sealed in its entirety).

[5] The Sealing Opposition Exhibits are listed in the chart at Doc. 225-3, and include:
  - Deposition Exhibit 837, Doc. 176-10 (sought to be sealed in its entirety);
  - Deposition Exhibit 801, Doc. 176-18 (redacted at Doc. 172-7);
  - Deposition Exhibit 804, Doc. 176-19 (redacted at Doc. 172-8);
  - Deposition Exhibit 429, Doc. 176-21 (redacted at Doc. 172-10);

## II.    Standard

The public has an interest in transparent court proceedings, and courts have long

held that the public has a right of access to judicial records.  *See Nixon v. Warner*

*Commc'ns., Inc.,* 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country

recognize a general right to inspect and copy public records and documents, including

judicial records and documents.").  The public's right to access judicial records derives

from the common law and the First Amendment.  *Rushford v. New Yorker Magazine,* 846

F.2d 249, 253 (4th Cir. 1988).  "While the common law presumption in favor of access

attaches to all judicial records and documents, the First Amendment guarantee of access

has been extended only to particular judicial records and documents."  *Stone v. Univ. of*

*Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988).[6]  The presumption of access

may be overcome, under the common law, "if competing interests outweigh the interest

in access."  *Id.*  Under the First Amendment, on the other hand, "access may be denied

only on the basis of a compelling governmental interest, and only if the denial is narrowly

tailored to serve that interest."  *Id.* (citing *Rushford,* 846 F.2d at 253).

When a party makes a request to seal judicial records, a district court "must

comply with certain substantive and procedural requirements."  *Va. Dep't of State Police*

---

- Scheduling Email, Doc. 176-27 (sought to be sealed in its entirety); and
- Exhibit 16 to the Declaration of Scott Sexton, Doc. 179 (redacted at Doc. 177) (this document is not included in Doc. 225-3).

[6] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

*v. Wash. Post,* 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, the district court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. *Id.* "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." *Id.*

As an initial matter, the Court notes that the motions to seal have been docketed since May 17, 2018 (Doc. 161), May 31, 2018 (Doc. 174), June 1, 2018 (Doc. 178), and June 11, 2018 (Doc. 188). Any interested party therefore has had sufficient time to intervene to contest any sealing order. The docket reflects that only the relator has opposed these motions to seal. Doc. 193; Doc. 216; Doc. 212. Accordingly, the Court concludes that the "public notice" prerequisite to entry of a sealing order has been satisfied. *See Stone,* 855 F.2d at 181 (discussing use of docketing to comply with procedural requirements for sealing).

### a. Classification as Judicial Records

Before considering whether a common law or First Amendment right of access has attached to documents, a court must first assess whether the materials at issue actually constitute "judicial documents and records." *In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D),* 707 F.3d 283, 290 (4th Cir. 2013).

Judicial records are documents "filed with the objective of obtaining judicial action or relief," and which "play a role in the adjudicative process, or adjudicate

5

substantive rights." *In re Application*, 707 F.3d at 290–91. To the extent the court does not rely on a document to reach its decision, the document is not a judicial record and no right of access applies. *Hunter v. Town of Mocksville,* 961 F. Supp. 2d 803, 806 (M.D.N.C. 2013) (citing *In re Application,* 707 F.3d at 290–91); *see also United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003) (observing some court-filed documents "may not qualify as 'judicial records' at all"); *In re Policy Mgmt. Sys. Corp.,* 67 F.3d 296 (table), 1995 WL 541623, at *3–4 (4th Cir. Sept. 13, 1995) (holding that documents filed in connection with a motion to dismiss were not judicial records because they were not considered by the court in adjudication of the motion).

Duke seeks to seal several Sealing Opposition Exhibits on which the Court has not relied in deciding whether to seal the Sanctions Exhibits.[7] As explained in detail *infra*, an examination of the communications in the Sanctions Exhibits shows that Duke's proposed grounds for sealing them—attorney-client privilege—is tenuous at best, and Duke has not otherwise offered sufficient evidence to establish the privilege or shown that its interests outweigh the public's interest in open courts. It was thus unnecessary to review the exhibits submitted by the relator in support of his secondary position that any privilege had been waived.[8]

---

[7] These include Deposition Exhibit 801, Doc. 176-18; Deposition Exhibit 804, Doc. 176-19; and Deposition Exhibit 429, Doc. 176-21. Since these documents are not judicial records, the Court has not included a description of their content.

[8] *See, e.g.,* Doc. 193 at 11 n.40 (citing to Deposition Exhibit 801, Doc 176-18); *id.* at 11 n.41 (citing to Deposition Exhibit 804, Doc. 176-19); *id.* at 12 n.47 (citing to Deposition Exhibit 429, Doc. 176-21). While the Court need not definitely decide the issue of waiver, it is difficult to understand Duke's argument, given Duke's disclosure of these materials to outsiders with no

Because the Court did not rely on these three Sealing Opposition Exhibits, they are not judicial records and the public does not have a right to access them. *Hunter,* 961 F. Supp. 2d at 806 (citing *In re Application,* 707 F.3d at 190–91; *see also Moussaoui,* 65 F. App'x at 889. The Court will therefore grant the motion to seal, Doc. 174, as to these documents identified by CM-ECF docket number in footnote 7. If these documents are used to support or oppose a future motion, the Court may unseal them in the future.

The Court has considered two Sealing Opposition Exhibits, a memorandum from Duke's Research Integrity Officer, Doc. 176-10, and a Scheduling Email, Doc. 176-27, that were directly relevant to the privilege question before the Court on the motion to seal and that provided helpful context. The Court has not identified any Fourth Circuit decision classifying exhibits to a motion to seal as "judicial records." However, courts in this circuit have found that documents filed to facilitate protective orders and other discovery motions do not qualify as judicial records. *See, e.g., Ohio Valley Envtl. Coal. v. Elk Run Coal Co.*, 291 F.R.D. 114 (S.D.W. Va. 2013) (finding a document filed to facilitate ruling on a protective order is not a "judicial record" triggering a First Amendment or common law right of public access, but denying the motion to seal because the document was not confidential and good cause did not exist to warrant a protective order); *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08-CV-918, 2010 WL 1418312 (M.D.N.C. Apr. 2, 2010) (finding exhibits to motions to compel and for a

---

mention of privilege by Duke for months. *See United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982) (per curium) (noting that "[a]ny disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege").

protective order are not judicial records, but applying the "good cause" standard under Rule 26(c) as well as the common law right to public access standard to grant in part and deny in part the motions to seal); *see also Guessford v. Pa. Nat'l Mut. Casualty INS. Co.,* No. 1:12-CV-260, 2014 WL 12594127, at *2 (M.D.N.C. Sept. 30, 2014) (finding documents related to motions for summary judgment, sanctions, and in limine to be "judicial records" because "[e]ach set of documents was filed in connection with either a dispositive or non-dispositive motion, and each motion was filed with the objective of obtaining judicial action (namely, the granting of a motion *other than a motion to seal*)" (emphasis added)).

While not a discovery motion *per se*, motions to seal concern procedural issues similar to those requesting protective orders:  the manner and extent to which documents are disclosed to non-parties.  Exhibits to motions to seal do not ordinarily help "adjudicate substantive rights," nor is it apparent that they usually "play a role in the adjudicative process."  *See In re Application*, 707 F.3d at 290.  The exhibits here are not proffered towards substantive issues in the case and the Court has not considered them in connection with the motion for sanctions.  Accordingly, the Court finds that Doc. 176-10 and Doc. 176-27 do not qualify as "judicial documents," and no public right to access attaches.  These documents may remain under seal.  If these documents are used to support or oppose future motions, and thereby become judicial records, the Court may unseal them.

The Sanctions Exhibits and the Sanctions Opposition Materials, on the other hand, have been filed in connection with a motion asking the Court to impose significant

8

sanctions, including disqualification of counsel and exclusion of evidence. As this motion has the potential to affect the relator's substantive rights, the accompanying exhibits are judicial records. *See 360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. 5:14-CV-310-F, 2016 WL 3030166, at *6 (E.D.N.C. May 25, 2016) (finding exhibits filed in connection with a motion to disqualify counsel to be judicial records).[9] It is therefore necessary to consider whether the common law or First Amendment right to public access applies to the Sanctions Exhibits and the Sanctions Opposition Materials.

### b. Right of Public Access Standard

The public right of access to judicial records is derived from "two independent sources: the common law and the First Amendment." *Va. Dep't of State Police,* 386 F.3d at 575. To determine whether the First Amendment provides a right to access, courts employ the "experience and logic" test, asking "(1) 'whether the place and process have historically been open to the press and general public,' and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re Application*, 707 F.3d at 291 (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)). When a motion is dispositive, such as for summary judgment, it is well established that materials submitted are subject to the First Amendment right of access. *Va. Dep't of State Police*, 386 F.3d at 578–79. The Fourth Circuit has further held that

---

[9] One of the exhibits submitted as part of the Sealing Opposition Exhibits, Doc. 179, was a duplicate of one of the Sanctions Exhibits, Doc. 167. Whether or not it was considered in connection with the motion to seal hardly matters, as it was considered in connection with the motion for sanctions. It too is a judicial record. The Court reminds the parties to avoid filing duplicates of exhibits already on the docket, especially if such filing will give rise to another motion to seal.

documents "filed with the objective of obtaining judicial action or relief," but not in connection with a dispositive motion, are judicial records generally subject to the common law right of access. *In re Application*, 707 F.3d at 290–91.

The Fourth Circuit has not addressed whether the common law or First Amendment right of access attaches to documents filed in connection with a sanctions motion. One court has held that a sanctions motion is non-dispositive and the common law right of access applies, *see Silicon Knights, Inc. v. Epic Games, Inc.*, 5:07-CV-275-D, 2010 WL 11566361, at *1 (E.D.N.C. June 15, 2010). However, that same court has held that in a motion to disqualify counsel, there is a First Amendment right of access. *360 Mortg. Grp., LLC*, No. 5:14-CV-00310-F, 2016 WL 3030166, at *6.

As the *360* court noted, "pretrial civil proceedings are generally open to the public," and "the specific proceedings currently before the court—motions to allow withdrawal of counsel and to disqualify counsel—have no history of secrecy." *Id*. In addition, a motion to disqualify counsel is

> in essence, a dispute over legal ethics. Transparency in this arena is undoubtedly beneficial. Despite the important role lawyers play in society's essential functions, the legal profession is largely self-regulating. On the relatively rare occasion the court is called to pass on questions of legal ethics, the public's ability to review the decisionmaking process serves to increase confidence in the judicial system, and to improve the accountability of individual members of the bar.

*360 Mortg. Grp., LLC*, No. 5:14-CV-00310-F, 2016 WL 3030166, at *6.

The Court agrees with the logic of the *360* opinion. Because the motion for sanctions is essentially a motion to disqualify counsel, the Court concludes that the public

has a First Amendment right of access to the materials filed in connection with the sanctions motion.[10]

### c. First Amendment Right of Access

Under the First Amendment, "access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180. "The party seeking to limit public access bears the burden to show that sealing is appropriate." *Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 1:15-CV-274, 2017 WL 1745531, at *2 (M.D.N.C. May 4, 2017). This must be a "significant countervailing interest" that "outweighs the public's interest in openness." *Id*. To meet its burden, "[t]he party seeking to seal must provide specific reasons to support its position." *Id*. Accordingly, "[t]he First Amendment right of access cannot be overcome by [a] conclusory assertion." *Press-Enter. Co. v. Superior Court,* 478 U.S. 1, 15 (1986).

Claims of confidentiality for court filings cannot be made indiscriminately and without evidentiary support. *Bayer CropSci. Inc. v. Syngenta Crop Prot., LLC*, No. 13-CV-316, 2013 WL 12137000, at *1 (M.D.N.C. Dec. 12, 2013). Statements in a brief are not evidence and are insufficient to justify a motion to seal. *See Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 730 (M.D.N.C. 2013); *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) (declining to consider "[c]ounsel's unsupported assertions

---

[10] The result in this case would be the same, however, even if the Court applied the lower common law right of access.

in respondent's brief" as evidence); *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.").

## III.  Discussion

In the various motions to seal, Duke maintains that certain exhibits should be sealed from disclosure on the grounds of the attorney-client privilege, confidentiality requirements arising out of federal regulations governing investigative information, and the protection of confidential personnel information.

Duke has identified only one document it contends should remain sealed because it contains personnel information: Doc. 176-21.[11] This document was offered in opposition to Duke's motion to seal and was not, as indicated *supra*, considered by the Court in deciding that motion. As it is not a judicial record and will remain sealed for that reason, the Court has no need to examine the claim that it contains confidential personnel information.

The remaining grounds, the attorney-client privilege and the protection of confidential investigative information, are considered below.

### a.  The Attorney-Client Privilege

In support of its motion for sanctions, Duke filed the relator's answers to a Duke interrogatory in which the relator details, by date, conversations he had with co-workers,

---

[11] Although the chart in Doc. 225-4 also includes "Private Personnel Record" as the "Basis for Sealing" portions of the relator's interrogatory responses, Doc. 191-8, this ground is not asserted in Duke's brief in support of sealing this document. Doc. 196. As this contention is unsupported by the brief, the Court will disregard it.

Doc. 165, Doc. 166, Doc. 167, and Doc. 179, along with some emails about these conversations that the relator sent to himself shortly after they took place. Doc. 164. Duke contends that over twenty statements made by co-workers to the relator as reflected in these interrogatory answers and emails contain information protected by the attorney-client privilege and should be sealed.[12] All but one of these statements mention counsel for Duke, and the one exception references a meeting that a later statement indicates was scheduled by counsel for Duke. *See* Doc. 166 at 18 (May 30, 2013). None of the statements are by a Duke lawyer directly to the relator or by the relator directly to a Duke lawyer. All of them are filtered through at least one of the relator's co-workers.

Courts generally accept a claim of privilege as capable of overriding the presumption of public access and thereby justifying redaction of documents. *See, e.g., Siedle v. Putnam Invs., Inc.,* 147 F.3d 7, 11 (1st Cir. 1998); *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1073 (3d Cir. 1984); *Hanson v. Wells Fargo Home Mortg., Inc.,* No. C13-0939, 2013 WL 5674997, at *3 (W.D. Wash. Oct. 17, 2013); *Travelers Prop. Cas. Co. of Am. v. Centex Homes,* No. 11-3638, 2013 WL 707918, at *1 (N.D. Cal. Feb. 26, 2013); *Armstrong v. Kennedy Krieger Inst., Inc.,* No. WDQ-11-3380, 2012 WL 1554643, at *6 (D. Md. Apr. 30, 2012). The Court assumes without deciding that the attorney-client privilege would justify sealing covered communications in most

---

[12] Duke also asks to seal portions of a meet and confer letter sent from Duke to the relator's counsel, Doc. 168, and the relator's declaration, Doc. 190, both of which describe the relator's interrogatory answers, as well as the affidavit of Alan Schneider, Doc. 163, which summarizes information contained in the relator's emails to himself. As these documents are overlapping in content with Docs. 164 to 167, this analysis is applicable to all.

situations.  Thus, the question before the Court is whether the information Duke seeks to seal falls within this privilege.

### 1.  Applicable Legal Standard

Protection of client confidences is the reason behind the attorney-client privilege, *Trammel v. United States.*, 445 U.S. 40, 51 (1980), and the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."  *Fisher v. United States*, 425 U.S. 391, 403 (1976).  The Fourth Circuit has emphasized that "the privilege is not absolute," but instead must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011).

Indeed, the published cases in this circuit generally arise in the context of testimony or other evidence from the attorney about statements by the client.  *See*, *e.g.*, *United States v. Jones,* 696 F.2d 1069 (4th Cir. 1982) (per curium); *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998).[13]  Nonetheless, it is clear that the privilege "may also be extended to protect communications by the lawyer to his client, agents, or superiors or to other lawyers in the case of joint representation, if those communications reveal

---

[13] As a result, the test for determining whether the privilege applies has generally been stated in this circuit in terms of communications made by a client to an attorney.  In *Hawkins*, for example, the Fourth Circuit stated the following test for determining whether the attorney-client privilege applies:  "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."  148 F.3d at 383; *see also Jones,* 696 F.2d at 1072.

confidential client communications." *United States v. Under Seal*, 748 F.2d 871, 874

(4th Cir. 1984).  Many courts apply the privilege more broadly to statements by counsel

to the client that relate to legal services.  *See, e.g.*, *United States v. Christensen*, 828 F.3d

763, 802–03 (9th Cir. 2015) (discussing communications from the attorney to the client);

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264, 1267 (D.C.

Cir. 2018) (applying privilege to "communications in which an attorney gives legal

advice").  The Court assumes without deciding that the privilege would also cover

statements by counsel that consist of confidential legal advice, even if the statement does

not directly or indirectly disclose a client confidence.

Even so, the attorney-client privilege does not cover everything between a lawyer

and a client and has significant limitations otherwise.  "An attorney's involvement in, or

recommendation of, a transaction does not place a cloak of secrecy around all the

incidents of such a transaction."  *In re Fischel*, 557 F.2d 209, 212 (9th Cir. 1977); *accord*

*United States v. Freeman*, 619 F.2d 1112, 1119–20 (5th Cir. 1980).  For example, "[t]he

privilege only protects disclosure of communications; it does not protect disclosure of the

underlying facts by those who communicated with the attorney."  *Upjohn Co. v. United*

*States*, 449 U.S. 383, 395 (1981).  It does not cover the fact that an attorney-client

relationship exists or the fact that the attorney undertook certain services on behalf of the

client.  *See*, *e.g.*, *Behrems v. Hironimus*, 170 F.2d 627, 628 (4th Cir. 1948).  Similarly, an

attorney's request for information or acts or statements of merely clerical significance are

normally not privileged.  Paul F. Rothstein & Susan W. Crump, *Federal Testimonial*

*Privileges* § 2:11, n.3–4 (2d ed. 2017).

In addition, when an attorney does non-legal work for a client, communications in connection with that non-legal work are not privileged. *See, e.g.*, *Jones,* 696 F.2d at 1072–73 (doubtful that communications were confidential because the clients "retained the attorneys primarily for the commercial purpose of obtaining written tax opinions to include in their coal lease promotion brochures rather than for the purpose of obtaining legal advice for their own guidance as clients"); *In re Grand Jury Subpoenas dated March 9, 2001*, 179 F. Supp. 2d 270, 291 (S.D.N.Y. 2001) (communications about non-legal issues such as public relations are not protected by the attorney-client privilege); *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 488 (D. Kan. 1997), *on reconsideration in part*, 175 F.R.D. 321, 488 (D. Kan. 1997) ("A party may not cloak a document with a privilege by simply having business, scientific or public relations matters handled by attorneys, whether in-house or outside counsel."). The attorney-client privilege does not protect communications about business or technical data. *See, e.g., Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987) (collecting cases). When a communication has multiple purposes, such as both a legal and a business purpose, most courts apply the "primary purpose" test to determine whether the communication is privileged. *See, e.g.*, *Boehringer Ingelheim Pharm., Inc.*, 892 F.3d at 1267.

Finally, the participation of counsel in an internal investigation does not "automatically cloak the investigation with legal garb." *In re Grand Jury Subpoena*, 599 F.2d 504, 511 (2d Cir. 1979). Indeed, when in-house or outside counsel undertakes an investigation for a client, communications may or may not be privileged, depending on the circumstances. *See id.; compare In re Allen,* 106 F.3d 582 (4th Cir. 1997) (finding

communications between an attorney general and the outside counsel he hired to conduct an investigation of mismanagement in his office were protected by the attorney-client privilege because the hired attorney spent most of her time on legal rather than investigatory matters), *with Allied Irish Banks v. Bank of Am.*, *N.A.*, 240 F.R.D. 96 (S.D.N.Y. 2007) (finding outside counsel's draft investigative report and interview notes were not protected by the attorney-client privilege because it was not shown these materials were primarily or predominantly of a legal character or to convey legal advice).

### 2. Analysis

Initially, Duke did not make any effort to go through the twenty-plus communications on an individual basis to show that the individual communications disclose privileged information. *See* Doc. 162. Instead, Duke seemed to rely on two points applicable to all of the communications.

First, Duke contended that the relator conceded the privilege applied to these communications by redacting them in his first interrogatory responses, thereby shielding potentially privileged information from disclosure to Duke's codefendants. Doc. 162 at 7. However, as the relator points out, the evidence shows that these redactions were made "out of an abundance of caution" so that Duke would have the opportunity to claim privilege. Doc. 175-8 at 2. The relator explicitly reserved the right to object to privilege claims by Duke. *Id.* The relator's due consideration for another party's potential privilege claims does not constitute a concession that the materials are privileged.

Second, Duke seemed to contend that the mere mention of counsel made these communications privileged. That is not the law, and indeed it would be inconsistent with

the well-established rule that all testimonial or evidentiary privileges must be strictly construed. *See United States v. Bolander*, 722 F.3d 199, 222 (4th Cir. 2013); *see also* Armen Adzhemyan & Susan M. Marcella, *"Better Call Saul" If You Want Discoverable Communications: The Misrepresentation of the Attorney-Client Privilege on Breaking Bad*, 45 N.M. L. Rev. 477, 479 (2015) (noting and discussing "the myth that all communications with a lawyer are protected" by the attorney-client privilege). It also runs contrary to the well-established requirement that the proponent must show three facts in order for the attorney-client privilege to apply: first, that an attorney-client relationship existed; second, that the particular communications at issue are privileged; and third, that the privilege was not waived. *Jones*, 696 F.2d at 1072. "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Id*. As discussed at some length *supra*, there are many reasons a communication by or with a lawyer would not be privileged.

Duke's umbrella approach is particularly unhelpful in this case. A review of the communications disclosed in the interrogatory answers and the emails shows that all were repeated to the relator by various Duke co-workers and that they conveyed many different kinds of information with varying degrees of apparent involvement by counsel.[14] As the discussion *infra* makes clear, the application of the law on attorney-client privilege to the individual communications here requires a communication-by-

---

[14] As noted *supra*, none of the attorney communications here came directly to the relator from a Duke lawyer.

communication analysis.  *See Upjohn,* 449 U.S. at 396–97 (application of privilege, such as attorney-client privilege, is determined on a case-by-case basis).

In its reply brief, after the relator pointed out the inadequacy of Duke's initial assertion of the attorney-client privilege, Duke made another umbrella argument, contending that all of these statements by counsel were made "in the context of an ongoing investigation," while "Duke was represented by counsel," and that the "communications concerned either facts communicated to counsel for the purpose of overseeing and providing legal advice, or counsel's impressions, or counsel's instructions."  Doc. 195 at 6.  Some of the communications themselves belie these contentions and, as to the remainder, Duke has provided insufficient evidence to support its privilege claims.

Beyond the interrogatory answers and emails themselves, Duke has submitted only one piece of evidence in support of these contentions:  an affidavit from outside counsel concerning his participation in a meeting on September 9, 2014.  *See* Doc. 161-1 (Declaration of Frederick Robinson).  In relevant part, Mr. Robinson avers that "[t]he purpose of this meeting was for outside counsel and our retained experts to (1) advise Duke researchers on the status of the government's investigation into allegations involving Potts-Kant and (2) inform the researchers about the process of gathering information that would allow outside counsel to evaluate the positions Duke would take in defense of the investigation."  Doc. 161-1 at ¶ 4.

Duke has submitted no other evidence to indicate when counsel was retained or consulted to provide legal advice and assistance in connection with any investigation.  It

19

is apparent from the conversations as a whole as reported by the relator that, by some point in 2014 or possibly earlier, Duke counsel was involved in some sort of investigation into the Foster Lab data problem, but it is not apparent that this investigation had a primary purpose of obtaining or providing legal advice. *See Fisher*, 425 U.S. at 403 (the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (holding that when "a given communication plainly has multiple purposes," the appropriate test is whether "obtaining or providing legal advice [was] *a* primary purpose of the communication, meaning one of the significant purposes of the communication." (emphasis in original)).

As other circuits have held, the participation of counsel in Duke's internal investigation did not "automatically cloak the investigation with legal garb." *In re Grand Jury Subpoena*, 599 F.2d at 511. The Court might guess or assume that counsel's primary purpose in the investigation was to provide legal advice, or that it became so at some point before September 9, 2014, but assumptions and guesses are insufficient grounds for a factual finding and for keeping court records secret.

Moreover, the relator submitted evidence that Duke's Research Integrity Officer (the "RIO") conducted the investigation. *See* Doc. 176-10 at 2 (2017 memorandum from the RIO indicating that an earlier "research misconduct investigation" resulted in a determination by Duke, not by counsel, that Ms. Potts-Kant "alone was responsible for the data falsification and fabrication"); *see also* Doc. 176-27 (referencing an "inquiry committee" interview). Indeed, the RIO memorandum does not mention any

involvement of counsel in the initial investigation and reflects that Dr. Ledford, the co-worker who had the most conversations with the relator, was not even interviewed in that initial investigation. Doc. 176-10 at 2.

As to the communications before September 9, 2014, even if one assumes counsel had been retained to provide legal advice and was speaking to the co-workers as part of that legal work, much of the disclosed information is obviously not privileged. For example, one communication did nothing more than mention that Duke counsel wrote a letter to funding agencies, which cannot be confidential as the letter was mailed to third parties. Doc. 166 at 18 (June 4, 2013); *see also id.* at 21 (June 25, 2013) (co-worker statement that Duke counsel wrote a letter to the National Institutes of Health stating that an investigation was underway). In another conversation, a Duke co-worker told the relator about a meeting researchers had with the RIO. *Id.* at 18 (May 30, 2013). The co-worker did not mention any statements or participation by counsel, *id.*, though a few days later she did mention that Duke counsel scheduled the meeting itself. *Id.* (June 3, 2013). Duke has submitted no evidence to show that counsel's involvement was anything other than ministerial, and there is nothing in the interrogatory answer itself that discloses a client confidence to counsel or any advice by counsel. Rothstein & Crump, *supra* § 2:11 ("[A]cts or statements of merely clerical significance, are normally not privileged.").

Some of the purportedly privileged information is speculative opinion or commentary by the relator's co-workers, not arguably privileged advice from counsel. *See, e.g.,* Doc. 166 at 21 (June 25, 2013) ("Ledford also stated that she thinks that this letter [to the National Institutes of Health] would be the subject of Que's meeting with

21

Duke counsel on the following day. . . ."); *id.* (July 1, 2013) ("Ledford said she thought Duke counsel was blaming Duke researchers for the Foster Lab data issue."); *id.* at 47 (August 5, 2014) ("Ledford also said that Duke researchers are not going to be 'protected' if they leave Duke – the government investigators could 'just show up at their house.'"). Duke has not explained why the attorney-client privilege would cover such opinions by co-workers.

Duke also appears to think that it can hide underlying factual information merely because the word "counsel" was used in the conversation. For example, in June 2013, a co-worker told the relator that she was compiling and reviewing data at the request of Duke counsel. Doc. 166 at 20 (June 24, 2013). The fact that the co-worker compiled and reviewed data is not covered by the attorney-client privilege, nor is the data itself. *See Upjohn*, 449 U.S. at 395 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). The fact that it was undertaken at counsel's request might be privileged if, as previously noted, there were any evidence that counsel at that time had been retained to provide legal advice and that the data was needed to provide legal advice, but even so the underlying facts that the co-worker compiled and reviewed the data is not. *See id.*

In another conversation that Duke alleges to be protected by privilege, the relator asked a co-worker if the co-worker thought Duke counsel would be involved in a particular process. Doc. 166 at 19 (June 5, 2013). The relator's question itself is certainly not privileged, as it was not made to counsel for the purpose of obtaining legal advice on behalf of Duke. Moreover, the co-worker did not answer the question. *Id.*

Even if she had, it is doubtful the answer would be privileged. *See Behrems*, 170 F.2d at

628 (finding the attorney-client privilege does not cover the fact that the attorney

undertook certain services on behalf of the client).

Finally, there were only four conversations between the relator and a co-worker on

or after September 9, 2014, where Duke contends privileged information was disclosed.

*See* Doc. 166 at 51 (September 9, 2014); *id.* at 53 (September 22, 2014; September 24,

2014); Doc. 167 at 10–11 (September 17, 2014). Even as to some of these, the privileged

nature is not obvious. *See, e.g.*, Doc. 166 at 53 (September 22, 2014) (co-worker's

statement to the relator "that her impression was that external counsel is overwhelmed"

does not convey any confidential information to counsel and does not appear to have

been offered by the co-worker to counsel as part of Duke's effort to obtain legal advice).

In other words, this is a case in which each purported communication has to be

examined individually to determine if the attorney-client privilege applies. *Upjohn*, 449

U.S. at 396–97 (application of privilege, such as attorney-client privilege, is determined

on case-by-case basis). Duke has made little to no effort to do so. Duke's broadside

privilege assertion is inappropriate where Duke has the burden of proof and in light of the

need to apply the privilege narrowly so as to promote its purposes and no further.[15] *See*

---

[15] While there are some communications that appear on their face to give rise to stronger privilege arguments, putting aside the waiver issue, it is not the Court's job to make those arguments for Duke. The Court will not undertake work that counsel has declined to present. *Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015) (noting "it is not the court's job to undertake the analysis and legal research needed to support such a perfunctory argument."); *Hughes v. B/E Aerospace, Inc.,* No. 1:12–CV–717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

*Solis,* 644 F.3d at 226 (noting the need to confine the privilege within "the narrowest possible limits consistent with the logic of its principle."); *Penn Mut. Life Ins. Co. v. Berck*, No. DKC 09-0578, 2010 WL 3294309, at *2 (D. Md. Aug. 20, 2010) (denying motion to seal allegedly privileged documents where movant offered only "barebones allegations" that the privilege applied).

Duke has not supported the motions to seal with evidence and legal argument demonstrating that the attorney-client privilege covers each of the purportedly privileged communications. A review of the communications shows that many are not, on their face, privileged. The public interest in access to exhibits purporting to support serious accusations of professional misconduct is high. Duke's overbroad and unsupported motion to seal the interrogatory answers, the emails, and any discussion of the answers and emails in briefs, declarations, or other documents is denied.

### b. The "Internal Investigation" Documents

Duke seeks to seal four Sanctions Opposition Materials on the basis that these documents contain confidential information concerning Duke's internal research misconduct investigation. Doc. 196 at 8. These documents include the Relator's Opposition to Duke's Motion for Sanctions, Doc. 189,[16] the deposition of Barbara Theriot, Doc. 189-6, portions of the relator's interrogatory responses, Doc. 191-8, and an email exchange from Ms. Theriot to the RIO. Doc. 189-11.

---

[16] To the extent the redaction on page 13 of this document is also made on the basis of the attorney-client privilege, this redaction is rejected for the reasons stated *supra* in Section III.a.

Duke contends that sealing these documents is warranted on two grounds: first, that Duke is required by law to maintain the confidentiality of these documents or certain statements within them under 42 C.F.R. §§ 93.108, 93.300, 93.304; and second, that these documents should be sealed because the Court has entered a protective order in this case protecting "proprietary business information" from disclosure to third parties. Doc. 196 at 8. Neither argument supports sealing.

### 1. Applicable Legal Standard

As discussed *supra,* the Sanctions Opposition Materials are subject to the First Amendment right of access. The party seeking to seal on the grounds of confidentiality must therefore provide specific reasons and evidentiary support to justify a motion to seal. *Va. Dep't of State Police,* 386 F.3d at 575; *Bayer CropSci. Inc.*, No. 13-CV-316, 2013 WL 12137000, at *1. Statements in a brief and conclusory assertions are insufficient to justify a motion to seal. *See Cochran,* 931 F. Supp. 2d at 730; *Press-Enter. Co.,* 478 U.S. at 15; *INS*, 464 U.S. at 188 n.6 (declining to consider "[c]ounsel's unsupported assertions in respondent's brief" as evidence).

### 2. Protections under Federal Regulations

Duke's assertion that federal regulations require the redacted portions to remain sealed is unpersuasive for two reasons. *See* 42 C.F.R. §§ 93.108, 93.300, and 93.304. First, these provisions only require Duke to maintain the confidentiality of the identities of respondents, complainants, and research subjects in a misconduct inquiry or investigation, *i.e.,* the identity of individuals. *See* 42 C.F.R. § 93.108(a) (West 2018) ("Disclosure of the identity of respondents and complainants in research misconduct

proceedings is limited, to the extent possible, to those who need to know, consistent with a thorough, competent, objective and fair research misconduct proceeding, and as allowed by law."); 42 C.F.R. § 93.300 (West 2018) ("Institutions under this part must . . . (e) Provide confidentiality to the extent required by § 93.108 to all respondents, complainants, and research subjects identifiable from research records or evidence[.]"); 42 C.F.R. § 93.304 (West 2018) ("Institutions seeking an approved assurance must have written policies and procedures . . . that include . . . protection of the confidentiality of respondents, complainants, and research subjects identifiable from research records or evidence.").

In the motions to seal, however, Duke proposes to redact or completely seal much more than just the identity of individuals; rather, Duke asks to shield from public view facts underlying central issues in this lawsuit. For example, Duke seeks to seal the email from a Duke employee to the RIO requesting guidance on resolving questionable data, Doc. 189-11, in its entirety instead of proposing redactions that would only withhold information identifying the employee. Doc. 188 at ¶ 6. Similarly, Duke proposes to redact the entire summary of false data in the relator's interrogatory response, Doc. 191-8 at 15–18, instead of just the names of those who identified the false data. Doc. 188 at ¶ 6. These requests are not narrowly tailored and may be rejected on this basis. *See Stone,* 855 F.2d at 180 (stating that requests to seal documents subject to the First Amendment right to public access must be "narrowly tailored"); *see also* Doc. 169 at 55 (statement of the Court during status conference that it will not provide a second chance to narrow overbroad motions to seal).

Even if the proposed redactions were sufficiently narrow, Duke has made only a conclusory assertion in a brief that the individuals referenced in the documents are "complainants" covered under the C.F.R provisions. Duke did not provide any evidence to support a finding that these persons are "complainants" as that term is used in the regulations; nor did Duke dispute in its reply the relator's contention that Duke has not identified most of these individuals as "complainants" at all, and that the identities of the three individuals to whom Duke has given this label are already publicly available. Doc. 212 at 6; Doc. 221 at 7.[17] Instead, Duke shifts its argument to say that these protections apply to employee Barbara Theriot and others as witnesses under Duke's obligation to "[t]ake all reasonable and practical steps to protect the positions and reputations of good faith complainants, witnesses and committee members and protect them from retaliation by respondents and other institutional members." 42 C.F.R. § 93.300(d) (West 2018).

Duke does not specify what harm to Ms. Theriot may result other than mentioning "potential retaliation." Doc. 221 at 8. It is not clear upon examination of the statements by Ms. Theriot (the only witness Duke addresses with specificity) in her email to the RIO, Doc. 189-11, and her deposition, Doc. 189-6, that she would suffer any harm to her reputation as a result of disclosure. Ms. Theriot is merely asking for guidance on how best to proceed with concerns she has about data, and she does not make accusations of

---

[17] Even if these provisions did apply to the individuals whose information is included in the materials sought to be sealed, the regulations provide for disclosure "as allowed by law." 42 C.F.R. § 93.108(a) (West 2018).

misconduct against any individual other than Erin Potts-Kant, Doc. 189-11, who Duke had long since fired. The plaintiffs have already publicly identified Ms. Theriot in the Amended Complaint as someone with a significant role in the uncovering of research fraud at Duke. *See, e.g.*, Doc. 25 at ¶¶ 41, 232, 235, 243, 258. Since "broad allegations of harm, unsubstantiated by specific examples of articulated reasoning [are] not enough to overcome the strong presumption in favor of public access," *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV-14-126, 2016 WL 1158851, at *2 (D. Ariz. Mar. 24, 2016) (quotation omitted), this position is likewise unavailing. *See also Press-Enter. Co.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion . . . .").[18]

### 3. The Protective Order

Duke also contends that the designation of documents as "confidential" under the Protective Order, Doc. 136, requires these documents to be sealed. Doc. 196 at 10. The designation of documents as confidential under a protective order does not require automatic sealing, as "courts in the Fourth Circuit have made it clear that the mere fact that a document was subject to a blanket protective order does not relieve the parties or a court of the obligation to comply with the Fourth Circuit's otherwise applicable sealing

---

[18] Duke's recasting of this argument in its reply, asserting that the disclosure of information that "may have been gathered throughout the research misconduct process" would serve to "chill" future investigations, is without merit for the same reasons. Doc. 221 at 3. Duke maintains this information should be protected to "encourage individuals to provide information and cooperate in misconduct investigations without the fear of their *identities* being made public or being subject to retaliation by others." Doc. 221 at 3 (emphasis added). As noted *supra,* Duke seeks to seal much more information than the identities of individuals, and this overbroad approach is rejected.

regimen." *Colony Ins. Co. v. Peterson,* No. 1:10-CV-581, 2012 WL 1047089, at \*2 (M.D.N.C. Mar. 28, 2012) (collecting cases). The Protective Order itself provides that covered documents are still subject to the Court's sealing regimen, stating that "this Order does not entitle [the parties] to file Confidential Information under seal," and that the Court's local rules on sealing must be followed and "will control." Doc. 136 at ¶ 1; *see also id.* at ¶ 15.

While a party's designation of materials as "confidential" under a protective order may be relevant to whether the documents at issue have been treated as confidential, it does not relieve a party seeking to hide court records from the public from proving that such secrecy is appropriate. Litigants do not hold veto power over public access to the courts, even when they agree to secrecy. *See Cochran,* 931 F. Supp. 2d at 729; *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 437–38 (D. Md. 2006).

The motion to seal the Relator's Opposition to Duke's Motion for Sanctions, Doc. 189, the deposition of Barbara Theriot, Doc. 189-6, portions of the relator's interrogatory responses, Doc. 191-8, and Ms. Theriot's email to the RIO, Doc. 189-11, is denied.

## IV.   Documents Filed Under Seal That Are Not Subject To Any Motion

Duke has filed a number of briefs under seal as provided for in the Local Rules. *See* LR 5.4(b) ("[T]he Motion to Seal should also be supported by a Brief, which may be filed under seal . . . ."). This provision allows parties to substantively discuss the information they wish to redact or seal in detail without disclosing it on the public record.

Four of these briefs—Doc. 162, Doc. 195, Doc. 196, and Doc. 221—were filed under seal in support of Duke's motions to seal the Sanctions Exhibits, Doc. 161, and the Sanctions Opposition Materials, Doc. 188. As both of these motions will be denied, and the Sanctions Exhibits and Sanctions Opposition Materials will be unsealed, there is no need to keep the briefs discussing these materials under seal as well. Accordingly, the Court will also unseal the briefs at Doc. 162, Doc. 195, Doc. 196, and Doc. 221.

The remaining two briefs—Doc. 201 and Doc. 224—were filed under seal in support of Duke's motion to seal the Sealing Opposition Exhibits, Doc. 174, which will be granted. Although these briefs provide a general description of the Sealing Opposition Exhibits, they do not quote or otherwise disclose specific details from these exhibits. *See, e.g.,* Doc. 201 at 1, 8, 11, and 13; Doc. 224 at 4–5. Accordingly, the Court will unseal the briefs filed at Doc. 201 and Doc. 224 unless, within 5 days of the entry of this Order, Duke files public copies of these briefs redacted only of the specific discussion of the Sealing Exhibits that remain under seal pursuant to this Order.

## V.    Conclusion

Courts should not keep their own records secret without a well-supported and substantial reason that outweighs the deeply-rooted public right of access. Without open courts and transparency about the basis for court decisions, suspicions about arbitrary exercise of government power can take seed and grow, arbitrary decision-making can avoid public scrutiny, and parties can file unsupported motions with serious accusations of misconduct under cover of secret exhibits. Duke has not shown that the information it seeks to seal is protected by any privilege or that any other substantial reason supports the

veil of secrecy Duke seeks to throw over these proceedings, which concern matters of serious public interest.  Therefore, the motions to seal will be denied.

It is **ORDERED** that the pending motions to seal are granted in part, denied in part, and deferred in part, as follows:

1. The Motion to Seal at Doc. 161 is **DENIED**.  On or after September 11, 2018, the Clerk shall unseal the documents filed at Doc. 166, Doc. 165, Doc. 164, Doc. 168, Doc. 167, and Doc. 163.

2. The Motion to Seal at Doc. 178 is **DENIED**.  On or after September 11, 2018, the Clerk shall unseal Doc. 179.

3. The Motion to Seal at Doc. 174 is **GRANTED**.  The Clerk shall maintain the documents filed at Doc. 176-10 (also at Doc. 201-1), Doc. 176-18 (also at Doc. 201-2), Doc. 176-19 (also at Doc. 201-3), Doc. 176-21 (also at Doc. 201-4), and Doc. 176-27 (also at Doc. 201-5) under seal.

4. The Motion to Seal at Doc. 188 is **DENIED**.  On or after September 11, 2018, the Clerk shall unseal Doc. 189 (also at Doc. 196-5), Doc. 190 (also at Doc. 196-1), Doc. 189-6 (also at Doc. 196-2), Doc. 191-8 (also at Doc. 196-3), and Doc. 189-11 (also at Doc. 196-4).

5. On or after September 11, 2018, the Clerk shall unseal the briefs filed at Doc. 162, Doc. 195, Doc. 196, and Doc. 221.

6. On or after September 11, 2018, the Clerk shall unseal the briefs filed at Doc.

   201 and Doc. 224 unless, within five (5) days of this Order, Duke has filed

   redacted copies as directed herein.

This the 4th day of September, 2018.


_____
UNITED STATES DISTRICT JUDGE